Smith's Executrix *v.* First Presbyterian Church of Bloomsbury.

SMITH'S EXECUTRIX *vs.* THE FIRST PRESBYTERIAN CHURCH OF BLOOMSBURY and others.

1. Where it clearly appears that a testator intended by a direction to sell certain real estate, an absolute conversion of such real estate for all the purposes of the will, the proceeds will be assets in the hands of the executor for the payment of legacies, as well as of the debts and funeral expenses in terms directed by testator to be paid out of such proceeds.

2. The general rule is, that where the name or description of a legatee is erroneous, and there is no reasonable doubt as to the person who was intended to be named or described, the mistake will not defeat the bequest. The rule applies as well to a corporation as to an individual.

On final hearing, on pleadings and proofs.

*Mr. J. G. Shipman,* for complainant.

*Mr. J. T. Bird,* for the church.

*Mr. A. G. Richey,* for the Presbyterian societies, and the academy.

THE CHANCELLOR.

John B. Smith, late of Bloomsbury, in the county of Warren, on or about the 18th of August, 1871, made his will, in which, after the usual prefatory statement of testamentary intention, he says: "And as to my wordly estate and property, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the following manner, to wit: *First.* My will is that the Shimer farm, in Still Valley, shall be sold by my executrix, hereafter to be named, as soon as possible after my decease, and that out of the price thereof, all my just debts and funeral expenses shall first be paid. *Secondly.* I will that my private residence in the town of Bloomsbury, county of Warren, and State of New Jersey, with all its contents and surroundings, consisting of furniture, &c., with barn, shall remain as I leave them, for the use and comfort of my family; and that my beloved wife, Sarah E. G. Smith, with my two sons, Walter G. and Chester, shall possess and hold said residence, with contents and surroundings, as their homes and dwelling place during the minority of said sons, Walter G. and Chester.

"*Item* 1*st.* Furthermore, I give and bequeath said residence in the town of Bloomsbury, and county of Warren, with one-third of the rents or income of the homestead farm and the Taylor farm, to my beloved wife, Sarah E. G. Smith, during the term of her natural life, or during her being and remaining my lawful widow; said one-third of rents or income to be paid by my sons, Walter G. and Chester, to their mother

after they become of age and take possession of the farms, as hereafter designated.

"*Item* 2*d.* I furthermore will, that the entire rents and profits of the two farms known as the homestead farm and Taylor farm, be appropriated and used for the natural comforts, support and benefit of my beloved wife, Sarah E. G. Smith, and sons, Walter G. and Chester, during the individual minority of said sons, and during my wife remaining my widow.

"*Item* 3*d.* I moreover will, that out of the rents and profits of said farm, my sons, Walter G. and Chester, shall receive liberal education, with the privilege of a collegiate education, should one or both desire it; and that out of said rents and profits, the homestead and Taylor farms, with private residence, shall be kept in thorough repair, and in good farming condition.

"I give, devise and bequeath to my son, Walter G. Smith, the homestead farm, together with a wood lot near Kennedyville, known as the Shimer wood lot; said son, Walter G. Smith, to come into full possession of the above described property at the age of twenty-one; to be his, and legal heirs, to have and to hold forever, upon the following conditions:

"*Item* 1*st.* To wit, that he, Walter G. Smith, shall pay to his mother during the term of her natural life, or during her remaining as my widow, the one-third of the annual income arising from said homestead farm.

"*Item* 2*d.* Furthermore, he, Walter G. Smith, shall pay to his brother, Chester, the sum of three thousand dollars, in cash, when said Chester Smith shall become of age.

"I give, devise and bequeath to my son, Chester Smith, and his legal heirs, to have and hold forever, from the age of twenty-one, the Taylor farm and three thousand dollars in cash, to be paid by his brother, Walter G. Smith, to equalize the value of their respective farms.

"*Item* 1*st.* Furthermore, I bequeath to my son, Chester Smith, and his legal heirs, the family residence, with contents, in the town of Bloomsbury, and county aforesaid, to be his to-

have and to hold forever, from the death of his mother, or from the time she ceases to be my lawful widow, upon the following conditions, to wit:

"*Item* 2*d*. That he, Chester Smith, pays to his mother one-third of the annual income from the Taylor farm, during her natural life, or during her being my lawful widow.

"I furthermore will, devise and bequeath to my beloved wife, Sarah E. G. Smith, the sum of two thousand dollars, to be paid out of the proceeds of the Shimer farm, and to be used by her at discretion.

"I give, devise and bequeath to the First Presbyterian Church in the town of Bloomsbury, and county of Hunterdon, and State of New Jersey, the sum of one thousand dollars, upon the following conditions, to wit:

"*Item* 1*st*. That said church, in said county and state aforesaid, shall raise, by her members, the sum of fifteen hundred dollars, in actual cash, for the benefit of said church and manse, within one year after my decease.

"*Item* 2*d*. Should said church fail to comply with the above conditions within the given time, said one thousand dollars shall be put to lawful interest, and said interest shall be annually appropriated by my beloved wife, Sarah E. G. Smith, to the Boards of the Presbyterian Church, United States of America, during the minority of my sons. When Walter G. and Chester, my sons, arrive at age, said one thousand dollars shall be equally divided between them.

"I bequeath to the following Boards of the Presbyterian Church in the United States of America, to wit:

"*Item* 1*st*. To the Board of Foreign Missions, one thousand dollars.

"*Item* 2*d*. To the Board of Domestic or Home Missions, one thousand dollars.

"*Item* 3*d*. To the Board of Education, five hundred dollars.

"*Item* 4*th*. To the Board of Church Erection, two hundred and fifty dollars.

"*Item* 5*th*. To the Board of Ministerial Relief, one thousand dollars.

" *Item 6th.* To the Board of Publication, two hundred and fifty dollars.

" For the intellectual and moral improvement of the young in the town, of Bloomsbury, and adjoining country, I give and bequeath the sum of one thousand dollars, to aid in erecting a suitable building for an academy or high school in the town of Bloomsbury, and under the control of the Presbyterian Church, upon the following conditions, to wit :

" *Item 1st.* That the citizens of Bloomsbury and adjoining country, raise, for the above object, the sum of two thousand dollars, within one year after my decease, or have the building erected within two years after my decease. If the above conditions are not complied with—

" *Item 2d.* I bequeath one-half of the above thousand dollars to the Blair Academy, in Blairstown, for the benefit of Presbyterian ministers' sons ; the remaining five hundred dollars to be given to the Board of Foreign Missions of the Presbyterian Church in the United States of America.

" And lastly, I do nominate and appoint my beloved wife, Sarah E. G. Smith, to be the executrix of this, my last will and testament."

The testator died on or about the 1st of May, 1872. His personal estate, at the time of his death, over and above the goods and chattels specifically bequeathed, amounted to only $1000. His debts amounted to $3500. The Shimer farm was sold by the executrix, and brought enough money to pay off, with the personal property applicable thereto, all the debts and legacies. The executrix being advised that she could not safely pay legacies out of the proceeds of the sale of the farm, and being in doubt as to whether the legacies were so described as to be legally identifiable, filed her bill for directions on these points.

That the testator intended that the legacies should be paid out of the proceeds of the Shimer farm, appears to me to be beyond all doubt. He did not intend to die intestate of any of his property. His language is, " As to my worldly estate and property, real, personal and mixed, of which I shall die

seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the following manner." He was undoubtedly aware of the insufficiency of his personal estate for the payment of debts and legacies, for he directs that the Shimer farm be sold as soon as possible after his decease, and that all his just debts and funeral expenses be first paid out of the proceeds. And again, he subsequently bequeaths to his wife $2000 out of the proceeds of the sale of that farm. And yet, notwithstanding his evident intention to dispose of all his property by will, if the proceeds of the sale of the Shimer farm should be held not to be applicable to the payment of the legacies, he will have died intestate of at least $6000 of those proceeds. The conversion of the farm is, in my judgment, absolute for all the purposes of the will. The direction for sale is positive. The only question that can arise is, as to whether the conversion is absolute for all the purposes of the will, or only for the particular objects specified—the payment of debts and funeral expenses, and the $2000 to the widow. The adverb "first," in the first section of the will, is expressive of the intention that the legacies shall subsequently be paid out of the same fund out of which the debts and funeral expenses are to be first paid.

In *Hill* v. *Cook*, 1 *Ves. & Bea.* 173, there was a devise, after payment of debts and legacies, of specific freehold and leasehold estates, subject to encumbrances, and of all other of the testator's freehold and leasehold estates, together with all his personal estate, to trustees, to sell ; and out of the money " in the first place," to pay their expenses in executing the will or trust, and, without further disposition, the will appointed the trustees executors. Lord Eldon, in that case, held, that the words, " in the first place," were not sufficient, under the circumstances, to express an intention of conversion to all intents and purposes. There was, however, no purpose beyond the payment of the expenses to be answered, and the direction was regarded as a conversion for a particular purpose, and the proceeds of the sale, beyond what was neces-

sary to answer that purpose, were decreed to go to the heir. In the present case, it is clear upon the whole will, that the testator intended an absolute conversion for the purposes of his will. Apart from rules of construction, it is obvious that if it should be held that the legacies to charities are not payable out of the proceeds of the Shimer farm, the testator's intention will be defeated. Where it clearly appears that a testator intended to impress on his real estate the character of personal estate, to all intents and purposes, the proceeds will be assets in the hands of the executor for the payment of debts and legacies. In *Flint* v. *Warren*, 14 *Sim.* 554, a testatrix, after expressing in her will her intention to dispose of all her real and personal estate, as thereinafter mentioned, gave certain legacies, and gave her executors and their heirs all lawful powers and authorities to manage her freehold estates, so that the same might, at their discretion, be sold and converted into money ; the net money to form part of her personal estate; and for those purposes and for every other purpose connected with her property, real or personal, she invested them, and her heirs, executors and administrators, with her full authority ; and she directed that any undisposed of surplus of moneys should be paid as she should, by any future writing or will, direct. It was held that the real estate was converted absolutely into money and subjected, in common with the personal estate, to the payment of the testatrix's debts and legacies. In the present case, the testator directs that, if the church in Bloomsbury, to which he had bequeathed $1000, should fail to perform the precedent condition on which that legacy is given, the amount be put at interest, and the interest annually appropriated by his wife, to the boards of the Presbyterian Church in the United States of America, during the minority of his sons, and that on their attaining their majority, the principal be equally divided between them. He evidently presumed that he had provided for the payment of this legacy in full, but he could not have presumed so under the circumstances, unless he contemplated the conversion of the Shimer farm for all the purposes of his

will. The proceeds of the sale of that farm are assets in the hands of the executrix for the payment of the legacies.

The misnomer of the charities is not in any case such as to defeat the legacies. It is sufficient that the legatee be so designated as to be distinguished from every other person, and the inaptitude of some of the particulars introduced into the testator's description, is immaterial; and this, whether the object of the gift be a corporation or an individual. 1 *Jarman on Wills*, 330. The general rule is, that where the name or description of a legatee is erroneous, and there is no reasonable doubt as to the person who was intended to be named or described, the mistake will not defeat the bequest. In this case, the testator bequeaths " to the following boards of the Presbyterian Church in the United States of America, to wit, to the Board of Foreign Missions, $1000; to the Board of Domestic or Home Missions, $1000; to the Board of Education, $500; to the Board of Church Erection, $250; to the Board of Ministerial Relief, $1000, and to the Board of Publication, $250. The corporate names of these legatees are, respectively, as follows: The Board of Foreign Missions of the Presbyterian Church in the United States of America; the Board of Home Missions of the Presbyterian Church in the United States of America; the Trustees of the Board of Education of the Presbyterian Church in the United States of America; the Trustees of the Church Erection Fund of the General Assembly of the Presbyterian Church in the United States of America; the Trustees of the General Assembly of the Presbyterian Church in the United States of America, for the use of the fund for disabled ministers and their families; and the Trustees of the Presbyterian Board of Publication. The description of these bodies given in the will, is sufficiently accurate to identify them positively. *McBride* v. *Elmer*, 2 *Halst. Ch.* 107; *Baldwin* v. *Baldwin*, 3 *Halst. Ch.* 211; *N. Y. Annual Conference, &c., Society* v. *Clarkson's Executors*, 4 *Halst. Ch.* 541; *General Lying in Hospital* v.

*Knight,* 11 *Eng. Law & Eq.* 191 ; *Minot* v. *Boston Asylum,* 7 *Metc.* 416.

It is unnecessary to consider the bequest for the intellectual and moral improvement of the young men in the town of Bloomsbury and adjoining country ; the precedent condition on which it depended has not been performed, and the bequest is therefore admitted to have failed. The bequest to the Blair Academy, in Blairstown, sufficiently identifies the legatee intended. It appears, by the answer, that John I. Blair, of Blairstown, in this state, conveyed certain land in that town to certain persons, in trust, to aid in establishing an institution of learning on those premises, to be under the control and management of the Presbytery of Newton. The institution, when finished, was to be called the Blair Academy, and was to be so regulated that the children of ministers of the Presbytery of Newton, and other Presbyterians, might and should have an opportunity of obtaining a thorough education therein, at moderate expense. Mr. Blair erected on the property a large and expensive structure, which he designated as Blair Hall, in which, at the date of the will, a prosperous school was kept, in which a number of Presbyterian ministers' sons were being educated at a moderate expense. That academy is still maintained for the same purposes and objects, and there was not, when the will was made (as, in fact, there is not still,) any other Blair Academy in Blairstown. That institution is now, as appears from the bill of complaint, a corporation by the name of The Blairstown Presbyterial Academy. The description seems to me sufficient. No question is raised as to the bequests to charities, except as to the sufficiency of the description of the legatees.

The complainant will be directed to pay the legacies which have not failed, out of the proceeds of the sale of the Shimer farm ; the payment to be made to the corporations and persons indicated in this decision.