Carter *v.* Gray.

MARY A. CARTER

*v.*

JOHN GRAY et al.

[Filed June 30th, 1899.]

1. A devise of all the residue of the testator's *estate* and *property* will pass the territory of his lands not otherwise disposed of and all his title thereto.

2. Where the words of a residuary devise plainly pass a fee, other language in the will will not be construed to impute to the testator an intent to die intestate of the residue, if such construction can be avoided. Presumptions in such case should favor a construction that the testator intended to die testate rather than intestate.

3. Where the dominant purpose of the testator plainly appears on the face of a will, the whole instrument (so far as the words used permit) will be construed in accordance with that dominant purpose.

4. Where the residuary clause blends the real and personal estate into one mass, the legacies are a charge not only on the personal but also upon the real estate.

Bill to quiet title, answer and proofs.

*Mr. Alan H. Strong* and *Mr. Woodbridge Strong,* for the complainant.

*Mr. James H. Durand* and *Mr. Leslie Lupton,* for the defendants.

Carter v. Gray.

GREY, V. C.

This cause is presented on bill to quiet title and answer admitting all the material allegations of the bill, save the averment that the complainant took a title in fee-simple to the land in question under the will of Simon Carter, deceased, under whom both parties claim, the complainant by devise, the defendants by descent.

The lands consist of five separate tracts in New Brunswick, N. J. Of these, Simon Carter died seized in fee-simple in 1893. His will is dated the 10th day of March, 1893, and was proven on April 6th, 1893, which is within a month after its date.

The whole controversy between the parties arises upon the construction of the will, and particularly upon the residuary clause and the next following paragraph. The complainant, who is the widow of the testator, contends that the will devises to her a fee-simple estate in all the testator's real property, and the defendants, who are the collateral heirs of the testator, insist that the devise to the complainant passed only a life estate in the realty, and that the testator died intestate of the fee.

The testator left him surviving, his widow, the complainant in this suit, and no children, his heirs-at-law being his nephews and nieces, who are the defendants in this suit. He was possessed at the time of his death of about $11,320 of personal estate. He does not appear to have owed debts to any substantial amount. He gave to his nephews and nieces ten money legacies. The sum of the legacies is $11,500, which would more than exhaust the whole of the personal estate. There is but one clause which makes any disposition of the testator's real estate, and that is the residuary clause.

Looking at the whole instrument, it is readily seen that care for his wife was the dominant purpose of the testator's mind, but in forming the will no expression was given to that purpose until he had by his money gifts disposed of all his personalty. Then comes the residuary clause, which shows the first dealing with the testator's real estate. It is in these words:

Carter *v.* Gray.

"All the rest and residue of my estate and property real and personal, and of every nature and kind and wheresoever situate and being, I give, devise and bequeath unto my wife, Mary A. Carter."

The testator, by this clause, clearly shows his intent to give to his wife the residue of both his realty and personality. This was the subject-matter of the gift. He does not define the extent of the interest which he devises to her, but his use of the words *estate* and *property* in this connection shows that he was giving to her his whole interest and ownership in this residue. The word "estate," at common law, even when used in a grant, signified such inheritance, freehold, &c., or the like, as any man hath in lands (*Co. Litt. 345*); and a devise of all one's real estate comprehends not only the physical thing itself but the interest which the testator has in it. It is a description of his fee (*Bridgewater* v. *Bolton, 1 Salk. *237, Chief-Justice Holt*), and carries not only the land but also the testator's interest in it. *Barry* v. *Edgeworth, 2 P. Wms. *524,* and cases there cited ; *Jackson* v. *Merrill, 6 Johns. 191.*

So, also, the word "property," when used in connection with other expressions showing that it refers to the testator's real estate, or where the devise is of all the testator's property, will give a fee to the devisee. *Morrison* v. *Semple, 6 Binn. 94 ; Jackson* v. *Housel, 17 Johns. 283.*

These constructions of the meanings of these words are those given at the common law and without the aid of any statutory declaration of the effect to be given to them. They accord with their usual and ordinary use by all classes of persons and must be held to indicate a purpose to devise a fee in the testator's real estate, unless some other expressions in his will control their use and indicate a different intent.

In addition to the common-law rule above cited, the statute of 1784 (*Gen. Stat. p. 3763 § 35*) provides that devises from which the words of inheritance may be omitted, but which contain no expressions indicating an intent to pass an estate for life only, and no limitation over, shall pass a fee-simple. This statute is declared in its preamble to be enacted to aid testators who intend by their wills to pass absolute estates but who omit

to use the technical expressions apt for that purpose. Since this statute, it has become common usage in drawing wills intended to pass a fee to omit the use of the word "heirs." A devise of the character named in the statute has, in legal construction under the operation of this statute, precisely the same effect as it would have had if the word "heirs" had been used.

The effect of the common-law construction of the words "estate and property" in this residuary gift must be held to pass a fee, if they alone supported the complainant's contention. The statute has the same effect, unless there be something in the will indicating a purpose to pass an estate for life only or to create a limitation over.

The only expression in the will which is claimed to show a contrary intent or to have a limiting effect, is found in the paragraph following the residuary gift, in these words:

"I do further will and direct that none of the foregoing moneys and legacies shall be paid until after the death of my said wife, and that she shall have for her sole use and benefit the whole of the income from my entire estate, after payment of my just debts and funeral expenses, so long as she my said wife shall live."

The defendants insist that the effect of this clause is to show an intent on the part of the testator to limit his wife's interest in his real estate to an estate during her life only, and that he died intestate of the fee in that real estate.

This clause cannot be given the construction for which the defendants contend. The subject-matter with which the testator is dealing in this paragraph is the "foregoing moneys and legacies" and not his real estate. His gifts of money by his previously bestowed legacies were so large in amount that they would exhaust the whole of his personal estate. Their payment could be required in a year from his death, and this would deprive his wife of any use of his personalty. The whole scheme of the will shows that her support was his controlling purpose. Her deprivation of the use of his personal estate by the legacies was the mischief he desired to remedy by this paragraph. It should be noted that the legacies remain bequeathed to the legatees after this clause precisely as before, save that the time

of payment is postponed until after the death of the wife, and it is during this same period—that is, so long as she shall live— that she is by the clause given the whole of the income. It is true the testator states it as the "income from my entire estate after payment of my just debts and funeral expenses, so long as my said wife shall live," but the subject-matter to which he was referring was his entire personal estate, and it was this whose payment he had just postponed during his wife's life, and it may be fairly understood that it was the income from this which he wished his wife to have during her natural life. His use of the words "my entire estate after payment of my just debts and funeral expenses" aids this view, because it is from the personal estate that debts and funeral expenses are paid, and it was the income from what remained of this estate after such payment, which he desired to secure to his wife.

In the clause restraining the payment of the legacies and giving the income to the wife, there is no mention of real estate nor of the preceding residuary devise. To construe by implication the words "my entire estate," occurring in the clause which obviously deals only with personalty, to include also real estate, and to cut down the residuary devise to a life estate, and cause the testator to die intestate of the fee, is, in my view, to stretch these words beyond their proper relation, and give to them a meaning not within the contemplation of the testator and opposed to the dominant object of the will, as it deprives the wife of a fee previously fully given.

A will ought not to be construed so as to impute to the testator a purpose to die intestate of the fee if it can be avoided. *Wadley* v. *North, 3 Ves. *367.*

This rule has been accepted in this country, and it has been held in Pennsylvania that no presumption of an intent to die intestate will arise where the words of the testator will carry the whole estate (*Stehman* v. *Stehman, 1 Watts 475*), and in New York that the law prefers a construction of a will which will prevent a partial intestacy to one which will permit it (*Vernon* v. *Vernon, 53 N. Y. 361*), and in this state in *Yawger* v. *Yawger, 10 Stew. Eq. 218.*

Carter *v.* Gray.

When the question presented requires the construction of a
residuary clause, the courts have a strong disposition so to inter-
pret it as to prevent an intestacy with regard to any part of the
testator's property. *Leake* v. *Robinson, 2 Mer.* *386. "It must
always be remembered," says Sir Richard Pepper Arden, master
of the rolls, in *Phillips* v. *Chamberlaine, 4 Ves.* *59, "that when
the residue is given, every presumption is to be made that the
testator did not intend to die intestate," and in *Warner* v. *Wil-
lard, 54 Conn. 470,* where there was a devise of the real estate
in terms for life to the wife, and also a gift of "all the residue
of my estate of whatever name or kind" to her, the residuary
gift was held to have passed to the wife a fee in the real estate.

*Kouvalinka* v. *Geibel, 13 Stew. Eq. 443,* is in some respects
like the case now under consideration. The testator gave his
real estate to his three children in fee, and by a subsequent clause
provided that the share of one of the three should be retained
by his executors to be held for her benefit, the proceeds there-
from to be paid to her every year during the term of her natural
life. The interest of this child was not cut down to a life estate
by the provision that she should have the proceeds during her
life, nor did the testator die intestate as to the fee of that share.
The devise to the child was held to pass a fee, though the rents,
&c., were to be collected and paid to her by the trustees during
her life.

In the case at bar the testator had disposed of the residue of
his whole estate by the residuary clause. The whole structure
of the will indicates that he did not intend in the next following
clause to deal in any way with the residuary disposition already
made, but only to take away from the legatees during his wife's
life, the enjoyment of their legacies, and to give it to her during
that period.

This view accords with the expressions used by the testator in
the legacy to James Carter. In the arrangement of his will he
had evidently overlooked James until after the other legacies,
the residuary clause and the paragraph giving the wife the use of
the legacy moneys for life, had been written. The testator then
gives to James Carter a legacy of $500, "to be paid to him as

said other legacies are to be paid at and after the death of my said wife, she having the income thereupon during the term of her life." There is no reason to believe that the testator intended the reservation of the payment of the preceding legacy moneys to his other legatees, to have any effect different from the reservation of James' legacy money. He evidently had in each case the same object in view, the saving to his wife during her life the enjoyment of his entire personal estate.

The phrasing of the residuary clause blending the real and personal estate into one mass, is held to indicate the testator's intent that the legacies are to be charged not only upon the personalty but also upon the real estate. *Corwine* v. *Corwine, 9 C. E. Gr. 579.* This rule is admitted in the complainant's bill to apply in the present case. The several money legacies are, under the terms of the will, charges upon the testator's real estate.

There should be a decree declaring that, as against the defendants, the complainant became seized, under the will of Simon Carter, deceased, of a fee-simple estate in the premises described in the bill of complaint, charged with the payment of the several money legacies given by that will; that the defendants have no title to the lands in question, and no other interest therein, than the charge of their said several legacies thereon.