JOSEPH G. SHANNON, executor of Ellen J. B. Shea, deceased,

*v.*

JOHN RYAN et al.

[Submitted May 20th, 1919.　Decided June 27th, 1919.]

1. If there is nothing contrary in the will, the mere giving of general legacies, and the passing of real and personal property in a residuary clause, makes the legacies a charge on such property.

2. To determine whether general legacies are chargeable on residuary real property, this court must construe the will in its entirety and give effect to the intention of the testatrix with the aid of extrinsic evidence as to the condition of her estate, and the objects of her bounty.

3. Considering the entire will in this case, general legacies to her nephew and executor and others are chargeable on the realty mentioned in the residuary clause, despite the provision that, should the personal estate be insufficient to pay pecuniary legacies, the executor should sell certain specified land which the testatrix regarded as of great value, but, in fact, was not, so that its proceeds were insufficient.

4. In a suit to determine whether general legacies are chargeable on the residuary estate, a letter of the scrivener who drew the will, offered to have the same effect as if he had been called and testified, is inadmissible on the ground that what the testatrix told him to do and what he omitted to tell her is inadmissible.

On bill, &c.

*Mr. David F. Edwards* and *Mr. Theodore Rurode,* for the complainant.

*Messrs. Edwards & Smith,* for the defendant John Ryan.

*Messrs. Treacy & Milton,* for the general legatees.

GRIFFIN, V. C.

In this case, were it not for the thirteenth paragraph of the will, the legacies would be clearly charged on the land. *Corwine* v. *Corwine,* 24 *N. J. Eq.* 579; *Johnson* v. *Poulson,* 32 *N. J. Eq.* 390.

In *Johnson* v. *Poulson, supra,* after stating that the personal property is the primary fund for the payment of legacies, Judge Dodd says: "The real estate is not charged with the payment of legacies unless the testator intended it should be, and that intention must be either expressly declared or satisfactorily inferred from the language and dispositions of the will. This rule was held, in *Corwine* v. *Corwine,* to be met and its requirements satisfied by giving to the word 'residue' its natural and proper force and effect. It signifies what is left of a number or quantity after something has been abstracted. * * * The rule itself being a judicial interpretation of words used with reference to the other conditions of the will, is subservient, as rules of construction in all cases are, to the cardinal and predominant one which seeks the purpose of the testator from all parts and provisions of the instrument considered together." It is, therefore, apparent, from this ruling, in the absence of anything to the contrary, that the mere giving of general legacies and then passing real and personal property in a residuary clause makes the legacies a charge.

The thirteenth paragraph of the will is as follows:

"*Thirteenth:* Should my personal estate be insufficient to enable the foregoing pecuniary legacies to be paid, then I direct my executor to sell either all or so much of my land at Spuyten Duyvil, in the State of New York, as may be necessary, in such manner as in his judgment is deemed best, to produce funds to supply the deficiency."

If the Spuyten Duyvil property was in New Jersey, this clause would weaken the view that the property in the residuary clause was charged. The Spuyten Duyvil property is not devised, it passes by the residuary clause, subject to the whole or part of it being taken and used for the payment of the legacies. Counsel for the general legatees, however, say that, under the decisions of the court of appeals of the State of New York (which, by stipulation, the parties agree may be considered without formal proof), the rule of construction is different from ours; that there the rule is that the mere giving of general legacies, followed by a residuary clause passing real and personal property, in the absence of a contrary intention, is not sufficient to charge

the residue with the payment of legacies (*Brill* v. *Wright, 112 N. Y. 129; 19 N. E. Rep. 628;* and the later case of *Carley* v. *Harper, 219 N. Y. 295; 114 N. E. Rep. 351*) ; and as there is a presumption that the testatrix knew the law, it will be presumed that the will was drawn in compliance therewith (*Walker* v. *Walker, 283 Ill. 11; 118 N. E. Rep. 1014*) ; and, therefore, in order that the Spuyten Duyvil property might be placed on a parity with the residue in New Jersey, she also designated this residuary property for sale to pay the legacies. There is some force in this argument. It is a circumstance tending to disclose her motive.

The case, however, may be decided without determining this question.

The residuary legatees, however, citing *Johnson* v. *Poulson, supra,* contend that, under the doctrine *expressione unius est exclusio alterius,* a mere direction to resort to the Spuyten Duyvil property to pay the deficiency, without further expression in the event of the proceeds of the Spuyten Duyvil property being insufficient, is a circumstance unfavorable to the charge, and must, under such circumstances, operate as an expression of her intent that the remaining deficiency should not be paid out of the residue, but the legacies should abate ratably.

In this situation of affairs the court must sense up the will in its entirety and give effect to the intention of the testatrix, with the aid of extrinsic evidence as to the condition of the estate and the objects of her bounty.

It is quite plain that the testatrix intended that the legacies in the twelfth paragraph should be paid. After giving a number of specific legacies and a devise of the house and lot where she resided, in the twelfth paragraph she gave legacies aggregating $48,000. To Joseph G. Shannon, who is her nephew and executor, she gave specific legacies; to the son of Joseph she gave her father's gold watch; and to the wife of Joseph she also gave specific legacies; and she devised her residence to her cousin Mary F. Ryan. By this twelfth paragraph, in which passes all of the general legacies, she gives to Joseph $5,000; she gives for the education of Joseph's son $5,000; she gives to the Sisters of Charity of St. Elizabeth, where she was educated, $10,000 to

found two scholarships, one of which was to be known as "The Rita Scholarship," as she puts it, "in loving memory of my daughter, Rita Bosdevez Burke;" she also gives to Roberta Shannon, a daughter of John Hall Shannon (one of her residuary legatees), $5,000; and to her faithful servant, Margaret McAneny, she gives $2,500. She also gives $1,000 to erect two chapels in memory of her parents, and $1,000 for the perpetual care of the family cemetery plot.

Apparently, her nearest kin were related as nephews and cousins.

Thus, it appears that, in this paragraph 12 she was bountiful to Joseph Shannon, one residuary devisee and legatee, and his family; and John Hall Shannon, while receiving nothing, his daughter was given $5,000; and the last residuary legatee, her nephew Robert Shannon, is nowhere mentioned in the will, excepting in the residuary clause.

The will was drawn on November 11th, 1916, and testatrix died November 28th of the same year, without any change happening in her estate between the two dates. Her personal estate was inventoried at $30,827.37; the debts amounted to $1,000, leaving a net personal estate of approximately $29,827.37. The Spuyten Duyvil property was sold for about $3,500. The value of the New Jersey real estate, excluding that specifically devised, is approximately $14,750, leaving the total value of real and personal property, excluding the specific devises and bequests, about $48,000. The legacies amount to $48,000.

It must be assumed that the testatrix knew what property she was possessed of at the time she made her will, and would hardly give legacies amounting to $48,000 with but $30,000 of personalty and the Spuyten Duyvil property, of the value of $3,500, to pay the same, with knowledge that she had some debts, and that there would be the expense of settling up her estate.

But it is argued that she conceived the Spuyten Duyvil property to be of great value. The property did have a speculative value, and she had endeavored to sell it. It consisted of land under water, unattached to the upland; and it is conceivable that, if taken for the purpose testified to, it might bring sufficient to make up the deficiency of personalty. But there is no

4

evidence as to what the value of this property was, even for the use for which it was adapted and was likely to be taken.

The question, therefore, presents itself, Did the testatrix mean that this residue, consisting of real estate alone, should, in all events, pass to the residuary legatees? She knew what this real estate consisted of; and I am rather inclined to the view that, if she meant in any event to give the same to these three legatees, she would have done so by specific devises, and then have put in a general residuary clause; and when it is considered that she made large provision for Joseph and his family, and the same for Roberta, daughter of John, it would seem that she did not intend that their legacies should be cut down to enable Joseph and John to take in the residuary clause at the expense of such general legacies.

Another feature to be considered is, Did she intend that her will as to the Rita Scholarship in memory of her daughter, the memorial chapels for her parents and the care of the family plot should fail for the benefit of the residuary legatees?

The whole spirit and tenor of this will, prior to the thirteenth clause, seem to indicate clearly that the testatrix gave to everyone whom she regarded as an object of her bounty, and for every purpose that she desired to have fulfilled.

The specific bequests are ten in number. The general legacies number twenty-five. They run to relatives of the blood, a servant, and other persons strangers to the blood, and for various purposes. It seems almost inconceivable that, in this wide distribution of her bounty, she should not mention her nephews John and Robert personally and yet intended that they should take in the residuary clause to the detriment of the general legatees. The whole will itself breathes an intimation that she intended that these legacies should be paid in full, even to the extent of taking the whole residue for the purpose. *Carter* v. *Gray, 58 N. J. Eq. 411; 43 Atl. Rep. 711.*

There is another feature of the will which tends to negative the inference arising from the thirteenth paragraph and leads strongly in the direction that she meant to have these legacies paid out of the residue, if necessary. By the first clause of her will she directs her executor to pay all her just debts and funeral expenses, and then proceeds:

"I authorize and empower my said executor to sell any and all of my real estate, save my home in Jersey City, on Fleet street, where I reside, which is hereinafter disposed of, at public or private sale, and upon such terms as, in his judgment, may be advisable."

This power of sale, according to the tenor of the will, could only apply to the residue, and this residue consisted of the Spuyten Duyvil property (or the balance of the proceeds of the sale thereof after paying the legacies) as well as the other real estate, undescribed, which passed by the residuary clause.

A thought which occurs is, Why did the testatrix give a power of sale, if she intended to limit the payment of legacies, after exhausting the personalty, to the Spuyten Duyvil property? The power of sale in the first paragraph could only affect what passed by the residuary clause. All of the residuary legatees were of full age. It was not for the purpose of paying her debts; she had ample for that. And unless this power of sale were given to enable the executor to sell this residue, if necessary to pay the legacies, then it was meaningless. *Ely* v. *Megie, 219 N. Y. 112; 113 N. E. Rep. 800.*

Taking the will in its entirety my conclusion is, that the general legacies in the twelfth paragraph are a charge upon the property contained in the residuary clause.

There was offered in evidence a letter of the scrivener who drew the will, with the same force and effect as if he had been called and testified. It was objected to, however, on the ground that evidence of what the testatrix told him to do, and what he omitted to tell her, was inadmissible. This letter was sent to me after the case was closed. The objection of counsel for the general legacies is sustained. *Farnum* v. *Penna. Co. for Ins., &c., 87 N. J. Eq. 108 (114); Ibid. 652; 101 Atl. Rep. 1053.*

A decree will be advised charging the general legacies in the twelfth paragraph upon the property mentioned in the residuary clause.