The complainant prosecutes this suit in its capacity as the executor and trustee under the last will and testament of one Edwin Burke who died a resident of Hunterdon County, New Jersey, on September 26th, 1944. The object of the proceeding is to elicit from this court a judicial construction of certain articles of the decedent's will.
The following are transcriptions of the articles of the will about which circulate some incertitude and diversity of opinion.
"Ninth: I give, devise, and bequeath to the Guaranty Trust Company of New York, as trustee the sum of One Hundred Fifty Thousand ($150,000) Dollars, in trust, nevertheless, for the following uses and purposes;
"A. I direct my said trustee to set aside One Hundred Thousand ($100,000.00) Dollars, and to pay to my said niece, Grace Baxter, the net income therefrom, during her lifetime, and in the event of her death, I direct that the net income be paid to her husband Edward Baxter, during his lifetime or until such time as he remarrys. Upon the death or remarriage of said Edward Baxter subsequent to the death of said Grace Baxter, or upon the death of the said Grace Baxter, should her husband, Edward Baxter, predecease her, this trust shall terminate.
"B. I direct my said trustee to set aside Fifty Thousand ($50,000.00), Dollars and to pay the net income therefrom to Mrs. Marjorie Nachtwey, presently living at 100 West 55th Street in the City of New York, New York, until her death or remarriage, in either of which events the trust shall terminate.
"Under provisions `a' and `b' of paragraph Ninth, the trustee may assume that the beneficiary has not remarried, until it is advised by a source believed by it to be responsible that said beneficiary has remarried.
"C. I direct my trustee to pay to the following organizations in equal shares the principal of each of the two said trusts as and when the trusts terminate.
"1. Catholic Charities of New York City, New York.
"2. The Salvation Army of America. *Page 172 
"3. One Hundred Neediest Cases of the New York Times, New York City, New York.
"4. Father Flanagan's Boys' Town in the State of Nebraska.
 * * * * * * * *
"Eleventh: I give, devise and bequeath, to the Lambs Club of New York City, absolutely and forever, any moneys that I may be entitled to receive from the sale of my plays and any moneys accruing to me from royalties at and after my death.
 * * * * * * * *
"Thirteenth: All the rest and remainder of my estate of whatsoever kind and wheresoever found, I give, devise and bequeath, absolutely and forever, to the following, in equal shares.
"1. Catholic Actors Guild, New York, N Y
"2. Actors' Fund, New York, N Y
"3. Percy Williams Home, East Islip, L.I., N Y
"4. The Lambs Club, New York, N Y
"5. The Players Club, New York, N Y
"6. The Dramatists' Guild.
"In the case of the Dramatists' Guild, such share is to be applied to their charity fund, but my executor shall be under no duty to see to the application of such money; and the receipt of the Dramatists' Guild, shall be a full discharge of my executor as to that bequest."
The distributable estate of the testator consists entirely of personal property. Cf. Brannan v. Meade, 140 N.J. Eq. 559;55 Atl. Rep. 2d 103.
Some initial obscurity was encountered in a positive identification of some of the legatees. There are no legal entities bearing such titles. Investigations have been pursued by counsel, and it seems manifest that the testator neglected to ascertain the precise corporate titles of those beneficiaries and chose to distinguish them by their general and customary designations.
It is the well-established rule that where the name or description of the legatee is erroneous, and there is no reasonable doubt as to who was intended to be named or described, the misnomer will not defeat the bequest. Smith's Executrix v.First Presbyterian Church of Bloomsbury, 26 N.J. Eq. 132;Goodell v. Union Association, c., Burlington Co., 29 N.J. Eq. 32; DeCamp v. Dobbins, 29 N.J. Eq. 36; affirmed, 31 N.J. Eq. 671; Lanning v. Sisters of St. Francis, 35 N.J. Eq. 392 and footnote; Moore's Executors v. Moore, 50 N.J. Eq. 554;25 Atl. Rep. 403; Van Nostrand v. Reformed Church in America, 59 N.J. Eq. 19; 44 Atl. Rep. 472; New *Page 173 Jersey Title, c., Co. v. American, c., Red Cross, 111 N.J. Eq. 12; 160 Atl. Rep. 842; First National Bank, c., Summit v.Freeholders, Union County, 123 N.J. Eq. 415; 198 Atl. Rep. 292;Board of Home Missions, c., v. Saltmer, 125 N.J. Eq. 33;4 Atl. Rep. 2d 69.
There is a familiar authoritative quotation that "Every claimant has a right to require that a court of construction, in the execution of its office, shall, by means of extrinsic evidence, place itself in the situation of the testator, the meaning of whose language it is called upon to declare." GermanPioneer Verein v. Meyer, 70 N.J. Eq. 192; 63 Atl. Rep. 835;
affirmed, 72 N.J. Eq. 954; 67 Atl. Rep. 23.
Parol and extrinsic evidence is competent and admissible to reveal the situation and surroundings of the testator and the objects with which he was familiar and in which he exhibited an interest, not in an effort to show what he meant to say, but to show what he meant by what he did say. Richardson v. Watson, 4Barn. Ad. 787; 1 Jarm. Wills 760.
In each case, it is the intention of the testator that constitutes the "life and soul" of the particular will. Duane
v. Stevens, 137 N.J. Eq. 329; 44 Atl. Rep. 2d 716.
Our courts have always respected the indubitable intention of a testator, and they will not suffer it to be defeated by a rigid and pertinacious adherence to the manifest inaccuracies of his words. Van Houten v. Pennington, 8 N.J. Eq. 745. The intention of the testator, however, must be somewhere and somehow reflected in his will. For instance, where the testator has failed to name the beneficiary and where no enlightenment whatever in that regard is perceptible in the entire will, the court will not indulge in mere speculation to designate who was intended to be the beneficiary of his bequest. Bruce v. Bruce,90 N.J. Eq. 118; 105 Atl. Rep. 492; reversed on another ground,90 N.J. Eq. 573; 107 Atl. Rep. 434. In such circumstances parol evidence is inadmissible to supply the omission. Extrinsic evidence is permissible, which, in its nature and effect, is explanatory of what the testator has actually written. Griscom
v. Evens, 40 N.J. Law 402. In expounding a will the decree of the court is to be declaratory of what is in the instrument.Cleveland v. *Page 174 Havens, 13 N.J. Eq. 101; March v. Norristown Penn Trust Co.,123 N.J. Eq. 282; 197 Atl. Rep. 276; Scarborough v.Scarborough, 134 N.J. Eq. 201; 34 Atl. Rep. 2d 791.
The following principle has been accepted quite universally: "For the purpose of determining the object of the testator's bounty or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will." Wigram, Extrinsic Evidence in Aid of Interpretation ofWills 142; Notice v. Schnell, 101 N.J. Eq. 252;137 Atl. Rep. 582; Higgins v. Mispeth, 118 N.J. Eq. 575; 180 Atl. Rep. 562; 4Page on Wills, §§ 1619 et seq.
In the present cause, the examination of the will and the collateral evidence guide me to the conclusions which may be definitely, yet expediently, expressed in the following summary manner:
 Legatee as designated Legatee intended
"Catholic Charities of New York "The Catholic Charities of the
 City, New York" Archdiocese of New York"
"The Salvation Army of America" "The Salvation Army," a corporation
 of New York
"One Hundred Neediest Cases of "The New York Times Neediest
 the New York Times, New York Cases Fund," a New York corporation
 City, New York"
"Father Flanagan's Boys' Town "Father Flanagan's Boys' Home,
 in the State of Nebraska" Inc.," a non-profit corporation
 of Nebraska
"The Lambs Club, New York, "The Lambs," a non-profit corporation
 N.Y." of New York
"Catholic Actors Guild, New "The Catholic Actors' Guild of
 York, N.Y." America, Inc.," a corporation
 of New York
"Actors' Fund, New York, N.Y." "The Actors' Fund of America."
 a corporation of New York
"Percy Williams Home, East Islip, "Percy Williams Home." a corporation
 L.I., N.Y." of New York
"The Players Club, New York, "The Players," a non-profit corporation
 N.Y." of New York.
 *Page 175 
The conclusions I have so far announced are not, I think, discordant with the convictions of counsel. Qui tacet consentirevidetur. There are, however, some additional subjects concerning which there are adverse contentions.
It is advocated on behalf of the defendants Father Henry Burke and Leo Burke, who are not only legatees but also next of kin of the deceased, that in respect of the proposed charitable gift to "The Dramatists' Guild" the decedent died intestate.
Initially I must heed the presumption against intestacy which attains even greater potentiality where, as here, the subject of the gift is a component of the residuary estate. Carter v.Gray, 58 N.J. Eq. 411; 43 Atl. Rep. 711; Goetter v. Berth,99 N.J. Eq. 625; 133 Atl. Rep. 872; Baldwin v. Baldwin, 107 N.J. Eq. 91; 151 Atl. Rep. 741; Second National, c., Co. v. Borden,113 N.J. Eq. 378; 167 Atl. Rep. 224; Brown v. Coxson, 118 N.J. Eq. 114; 177 Atl. Rep. 551; affirmed, 119 N.J. Eq. 85, 86;181 Atl. Rep. 42, 43; Parmentier v. Pennsylvania Co., c., 122 N.J. Eq. 25; 192 Atl. Rep. 62; affirmed, 124 N.J. Eq. 272;1 Atl. Rep. 2d 332; Brooks v. Goff, 127 N.J. Eq. 115;10 Atl. Rep. 2d 466; Barrett v. Barrett, 134 N.J. Eq. 138;34 Atl. Rep. 2d 579.
It is axiomatic that in the construction of doubtful clauses in a will, that interpretation is to be adopted which avoids a partial intestacy. Danker v. Cooper, 114 N.J. Eq. 283;168 Atl. Rep. 640; Bankers Trust Company of New York v. Greims,115 N.J. Eq. 102, 114; 169 Atl. Rep. 655; affirmed, 117 N.J. Eq. 397; 176 Atl. Rep. 112.
In the testament at hand it is observed that the testator expressly declared his intention to bequeath the one-sixth share of his residuary estate to "The Dramatists' Guild," and that it should be "applied to their charity fund."
It is to be implied that the testator had in mind some charitable fund of which he was aware and to which he desired to make his contribution. A contrary inference would be manifestly fantastic. And so, in such an exigency, there is all the more inspiration to explore the substratum of facts which in the present case proves to be revelational. *Page 176 
The testator at his death and for many years prior thereto was a member of the Authors' League of America, Inc., an association incorporated in the State of New York in 1912 by prominent writers, among whom were Rupert Hughes, Rex Beach, Gelett Burgess, Ellis Parker Butler, and Arthur C. Train. In pursuance of its constitution, the League was composed of "member guilds" such as the "Authors' Guild," the "Dramatists' Guild," and the "Radio Writers' Guild," and at a later date, the "Screen Writers' Guild."
It is evident that the Dramatists' Guild is not a distinct corporate entity independent of the Authors' League but in reality an integrant division of it. It was to the Dramatists' Guild that the testator was assigned by reason of his membership in the Authors' League.
In March of 1917 it was definitely resolved that the Authors' League of America ought to establish a charity fund, and to accomplish that purpose a corporation was duly organized and chartered in the State of New York bearing the title "The Authors' League Fund, Established by the Authors' League of America, Inc." The object of this affiliated corporation is "to foster the interest and improve the condition and social welfare of persons professionally engaged in the production of literary, dramatic, artistic or musical composition, and to provide voluntary aid and assistance to persons so professionally engaged and those dependent upon them in case of need * * *." Incidentally, I note the requirement that a majority of the board of directors of the Authors' League Fund Association must be members of the Authors' League of America, Inc.
A charity fund was thus created and has ever since been administered by the Authors' League Fund, Established by the Authors' League of America, Inc. The members of the League assigned to the Dramatists' Guild never had any charity fund under their separate and exclusive maintenance and control. In the light of the evidence it seems indubitable that "their charity fund" to which the testator referred in his will and the fund to which he intended to make his bequest, is the fund being administered by the Authors' League Fund, Established by the Authors' League of America, Inc. *Page 177 
That is the fund which the testator and the members of the Authors' League and of the several component guilds recognized as "their charity fund."
Assuredly, it was the existing fund from which the members of the Dramatists' Guild might and could receive aid that the testator intended to enhance by his bequest. He knew of the fund, but as in other instances he did not accurately inform himself of the name of the trustee by which the fund is possessed and controlled. The extrinsic evidence enables me to identify the legatee with reasonable certainty; hence I conclude that the testator intended to bequeath the equal one-sixth share of the residue of his estate to Authors' League Fund, Established by the Authors' League of America, Inc., to be "applied" to its charity fund.
Since this legatee is a duly incorporated charitable organization, the point so ably debated in some of the briefs that an unincorporated society may not take the legacy need not be determined. But, see, Hadden v. Dandy, 51 N.J. Eq. 154;26 Atl. Rep. 464; affirmed, 51 N.J. Eq. 330; 30 Atl. Rep. 429; NewJersey Title Guarantee and Trust Co. v. Smith, 90 N.J. Eq. 386;108 Atl. Rep. 16; New Jersey Title, c., Co. v. American, c.,Red Cross, supra; 1 Page on Wills (Lifetime ed.) 456 § 226.
There remains exposed to some comment the challenged legitimate right of the testator to bequeath, and the lawful power and authority of the foreign corporations to receive, the several testamentary bequests. Frankly, in the absence of an impeditive contention, I would not have supposed that there existed in modern comity by constitutional edict or by common law or statutory policy any inhibition against the acceptance by corporations of our sister State of New York of legacies of sucha nature bequeathed to them by a testator domiciled in this state. The thesis of the objection tends to resuscitate the forsaken policies exemplified by the ancient statutes of mortmain, and the early ordinations enjoining the transference of resources from one's native kingdom to another. Nevertheless, I am told by counsel that there is no reported decision in our state expressly determinative of *Page 178 
the point thus resurrected for consideration in the present cause. If so, I shall accept the opportunity to supply one.
The fundamental rule is stated in 23 Am. Jur. 179, § 198:
"It is generally held that personal property located in, or belonging to a resident of, one jurisdiction may properly pass by will to a corporation of another jurisdiction. The rule deducible from the decisions appears to be that such a corporation may take a bequest of such property if its charter and the laws of its domicil permit, unless the statutes of the testator's domicil or of the place where the property is situated must be construed to prohibit it by virtue either of their denial in terms of the right of such corporations thus to take such property or of their imposition of limitations upon the disposition of such property by will which render such a bequest ineffective. Where the laws of the state which has jurisdiction of the probate with respect to the personalty in question do not prohibit the bequest or the taking, the question is solely one of the foreign corporation's capacity to take as legatee and is determined in the ordinary case by the law of the incorporating state."
The public policy of our state may be primarily detected in the import and character of its pertinent legislation. Bigelow v.Old Dominion Copper Mining and Smelting Co., 74 N.J. Eq. 457;71 Atl. Rep. 153. Examples that promptly come to mind are our statutes which enable any corporation, other than a municipal corporation, created by any other state, kingdom, or government to hold and use for its corporate purposes any real estate in this state which may be devised to it, R.S. 14:15-1; N.J.S.A., and empower corporations of our state "to take by devise" and hold real and personal property "outside of this state in any of the several states" unless otherwise provided in its charter or certificate of incorporation. R.S. 14:3-1, N.J.S.A., see, also,R.S. 15:1-4, N.J.S.A., and our enactment which ordains that a will duly executed by a testator domiciled in this state is effective to pass personal property wherever situate, R.S.3:2-13, N.J.S.A.
I discover information concerning the modern principles of comity relative to the subject in the authoritative commentaries of Professor Joseph H. Beale in his works on The Conflict ofLaws and The Law of Foreign Corporations; of William Meade Fletcher, author of the treatise on The Law of *Page 179 Private Corporations; and the conclusions of the editors ofCorpus Juris and of American Jurisprudence.
"Bequests of personal property to a foreign corporation are everywhere valid. It is not contrary to the public policy of one state that gifts of personal property should be made to a corporation of another state, since the situs of the property is thus, or may be, removed to the other state." 2 Beale,Conflict of Laws (1935 ed.) 801 § 167.22; Beale, Law ofForeign Corporations (1904 ed.) 364 § 230.
"It is competent for the legislature of a state to prohibit a bequest to a corporation of another state, but this is seldom done, since personal property follows the locus of the owner, and there is no reason why it should be a matter of concern to the state that it should pass to a foreign corporation any more than to an individual residing out of the state. Generally, therefore, a foreign corporation which may acquire personal property, and which has capacity under its charter to take under a will, may take a bequest of personal property provided the testator is not prohibited by the laws of the state in which he is domiciled from making such bequests." 17 Fletcher, Law ofPrivate Corporations (1933 ed.) 216 § 8378.
"A foreign corporation may take and hold personal property under a bequest of a testator domiciled in a state other than that of its creation where it has power to do so under its charter or governing statutes of the state of creation and there is no prohibition of, or limitation on, the exercise of such power by the express statutory enactments or other manifestations of a contrary public policy of the state of the testator's domicile. The fact that a corporation cannot take by devise does not prevent it from taking under a will where there is an equitable conversion of the real estate into personalty." 68Corp. Jur. 531 § 151.
To those who are interested, as I have been, in exploring the subject, regardless of its lack of present uncertainty, I refer them to the treatise on wills composed by Professor William Herbert Page of the University of Wisconsin (Lifetime ed.)Vol. 1 p. 449 §§ 222 et seq., and to the following assemblage of reported decisions: In re Huss, 126 N.Y. 537;27 N.E. Rep. 784; St. John v. Andrews Institute for Girls, 191 N.Y. 254;83 N.E. Rep. 981; Hope v. Brewer, 136 N.Y. 126; 32 N.E. Rep. 558;18 L.R.A. 458; Robb v. Washington and Jefferson College,185 N.Y. 485; 78 N.E. Rep. 359; American Bible Society v. Healy,153 Mass. 197; 26 N.E. Rep. 404; Succession of Mounier,52 La. Ann. 79; 26 So. Rep. 776; In re Huge's Estate, 92 Mont. 36;9 Pac. Rep. 2d 1065; Cornwell v. Mt. Morris Methodist *Page 180 Episcopal Church (W.Va.), 80 S.E. Rep. 148; Vansant v.Roberts, 3 Md. 119.
There is at present nothing in our federal or state constitutions, our statutes or those of the State of New York, or in our judicial decisions, in the existent common law, or in our prevailing public policy which, so far as I am aware, forbids or invalidates the bequests made by this testator.
It is the obligation of this court to respect and to effectuate this decedent's testamentary dispositions, which, upon inquiry, do not appear to be in contravention of law or public policy.
A decree will be advised expressive of the conclusions herein stated. *Page 181