# COURT OF ERRORS AND APPEALS.

---

The Executors of ABRAHAM VAN HOUTEN, Sen., deceased, and Trustees of ABRAHAM VAN HOUTEN, Jun., deceased, appellants, and A. S. PENNINGTON, executor of ABRAHAM VAN HOUTEN, Jun., deceased, and RACHEL VAN HOUTEN, respondents.

The case in Chancery is reported *ante*, page 272.

*A. O. Zabriskie* and *Wm. Pennington* for the appellants.

*A. S. Pennington* and *P. D. Vroom* for the respondents.

GREEN, C. J.  The only question in this cause arises upon the construction of the will of Abraham Van Houten.  The testator first gives to his wife the use of his farm and dwelling house, with his farming utensils, stock, household servants and household and kitchen furniture, until his son Abraham should arrive at the age of twenty-one years.  After a variety of bequests, he then gives and devises as follows : " I give, devise and bequeath unto my son Abraham Van Houten, all the rest and residue of my estate both real and personal, whatsoever and wheresoever lying and being, of whatsoever description the same may be, excepting what is herein otherwise disposed of, to him, his heirs and assigns forever :  My will is, and I do order that my executors hereinafter named shall rent out all my property lying in the town of Paterson and Hackensack, and all houses and lots owned by me, at their discretion, for the benefit of my son Abraham Van Houten,

46

and the proceeds arising therefrom, after deducting all necessary expenses and charges, together with my personal estate, consisting of money, bonds, notes and mortgages, bequeathed to my said son Abraham Van Houten, to be put out to interest for the benefit of my son, by my executors, until he shall arrive to the age of twenty-one years; and I do further order that my executors give unto my said son Abraham Van Houten out of my estate a good college education and a decent support until he arrive at the age of twenty-one years; *but if my said son, Abraham Van Houten, should die, having no children, then my will is, and I do hereby dispose of my property* in the following manner, viz." The testator then, after giving legacies to the children and grandchildren of three of his sisters, devises the residue of his estate, one-third to his wife, and the remaining two-thirds to the relations of his first wife.

The testator died soon after the execution of the will, having an only child, the devisee named in the will, then an infant of very tender years. The devisee Abraham Van Houten, lived till he attained the age of twenty-one years, and died without having children. The question is whether under the provisions of the will, the limitation over of the estate given to the testator's son Abraham, was upon the death of the devisee *without children,* or upon the death of the devisee under *twenty-one* without children. In other words whether the estate vested absolutely in the devisee on his attaining the age of twenty-one years, or whether it remained a contingent estate during his life, liable to be defeated by his death at any time without children.

The doubt, if any there be, as to the true meaning of the will does not arise from the terms used, but from the connection in which they stand. The clause of the will expressing the contingency upon which the limitation over is made is in these words: But if my said son, Abraham Van Houten, should die having no children, then my will is and I do hereby dispose of my property in following manner, viz. :" There is no reference in this clause standing alone to the devisee's dying under twenty-one. The contingency *expressed* is simply the death of the devisee without children. It is insisted however that the clause

"under twenty-one years of age,' is fairly implied from the context, or if not from mere grammatical construction, yet that that was the true meaning of the testator, as collected from the whole scope of the will.

The true meaning of the passage, so far as rests upon its grammatical construction, depends entirely upon the idea with which it is set in opposition by the use of the conjunction with which the sentence commences. If the limitation over was immediately connected with the original devise, the meaning of the will would be entirely clear. The whole passage would then read thus : "I give, devise and bequeath unto my son Abraham Van Houten, all the rest and residue of my estate both real and personal, whatsoever and wheresoever * * * to him his heirs and assigns forever, but if my said son should die having no children then my will is, and I do hereby dispose of my property." In the sentence as it thus stands, the only contingency upon which the devise over is expressly limited or which can fairly be implied or supposed to exist in the mind of the testator, is the death of the devisee without children. But the clause containing the devise over does not stand in the will in that connection. Nor does the devise thus stated express the whole idea of the testator.

By the will the testator devises the residue of his estate real and personal to his son absolutely in fee simple, by the broadest and most comprehensive terms. He then provides that the whole estate, real and personal, shall remain in the hands of his executors and be managed for the benefit of the devisee until he is twenty-one. That out of it he shall receive an education and a decent support until he is twenty-one, and then occurs the clause in question, but if he die without children then the estate shall go over. The devise over stands not in opposition to the original devise, but to the event of the devisee's coming into possession. And upon the principles of grammatical construction, the use of the conjunction between the two members of the sentence (whose office is to express merely the relation and dependence of thought) connects the devise over not solely or mainly with the original devise, but primarily with the time of its enjoy-

ment.  Now it is perfectly clear that in order to express fully the testator's meaning, it is necessary to insert before the clause containing the devise over, a provision directing that the devisee should come into the possession of his estate on his attaining the age of twenty-one years.  The whole clause would then stand thus : I give the residue of my estate to my son Abraham, his heirs and assigns forever.  I direct my executors to rent the real estate, and to keep the proceeds thereof together with my personal estate invested for the benefit of my son until he arrive at twenty-one years of age.  And my will is that upon his attaining the age of twenty-one years my son come into the possession of all his estate real and personal, but if he die without children, then to go over.  It is true that there is in the will no express direction that his son shall come into possession of his estate at twenty-one, but it is there by necessary implication. The estate had been devised to him absolutely.  It had been devised to the mother and placed in the hands of the executors, until the devisee should attain the age of twenty-one years. The clause is necessary to complete the sense, and to express fully the connection and relation of thought subsisting in the mind of the testator between the original devise and the contingency upon which the devise over is limited.  Standing in this connection, if the clause containing the devise over had been simply, " But if my son die, then over," there could be no doubt that the devise over was upon the condition of his son's *dying* " *under twenty-one and without issue.*"  This view of the testator's meaning derived from the frame of the will and its proper grammatical construction, is strengthened by a view of the entire instrument, the general nature of its provisions, and the situation and circumstances of the testator.

The devisee was the testator's only child, and at the date of the will an infant of very tender years.  He was the peculiar object of the testator's care and bounty.  After making suitable provision for his wife, and making bequests to the relatives of his former wife and to his slaves, the testator gives the whole residue of his estate real and personal, to his only child in fee simple, by terms the most clear, broad and comprehensive.  The gen-

eral intent, the controlling idea of the will, is to vest the estate of the testator absolutely in his only child.

This is the disposition of the estate, indicated as clearly by the language of the will as by the voice of nature. There is nothing in the provisions of the will, aside from the particular clause in question, indicating an intent on the part of the testator to limit or in any wise to qualify the estate given to his son after he should attain the age of twenty-one years.

And yet, by the construction sought to be given to this will by the appellants, the whole interest of the devisee in the estate of his father would be the mere use of it for his own life, without the power of aliening the land, or disposing of the principal of the personal estate. That the testator should provide for the contingency of his son's death under twenty-one and without issue, was a natural and provident provision to guard against an ordinary contingency. That he should have desired to tie up his entire estate in the hands of his only child, after he attained to manhood, in favor of remote kindred having no special claim upon his estate or his sympathy, seems neither natural nor probable.

The fact that one-third of the property was given, in the limitation over, to the testator's widow, the mother of his infant son, strengthens the belief that the contingency contemplated was the death of the child under twenty-one years of age, and not a mere remote contingency which in the ordinary course of nature was not likely to occur in the lifetime of the mother.

The power of the Court to effectuate the manifest intent of the testator by inserting omitted words, by altering the collocation of the sentences, or even reading the will directly contrary to its primary signification, is well established. By so doing the Court do not propose to alter the will, to substitute their will for the will of the testator, but merely to prevent the intention of the testator from being defeated by a mistaken use of language. It is a question simply whether the Courts will execute the clear intent of the testator not fully or clearly expressed in the will, or whether by a strict technical adherence to the form of words and their literal meaning, they will suffer the intention

of the testator to be defeated. Upon this point the law is well settled, both in regard to real and personal estate.

It was said upon the argument, probably with much truth, that upon the construction now given to the will, this estate will take a direction which the testator never could have contemplated, and which he would not have approved. The answer to this objection will be best given in the language of Chief Justice KIRKPATRICK in *Nevison* v. *Taylor*, 3 *Hals*. 46, in reply to a similar suggestion. "This is no argument against the construction. A will is not to be construed according to future contingencies, but according to the true meaning appearing on the face of it, at the death of the testator. Contingencies not contemplated cannot be provided against. Man sees but a little way into futurity; a single event unforeseen deranges all his plans; and teaches us that man with all his wisdom, toils for heirs he knows not whom." The same construction must now be given to this will as if the devisee himself or his alienee were before the Court claiming under its provisions.

The decree of the Chancellor must be affirmed. But as the question is raised in a case of doubt upon the construction of a will, by those claiming under it, the affirmance will be without costs against the appellants. As the bill was filed for the purpose of settling the construction of the will, it is proper, in accordance with the practice in equity, that the costs should be paid out of the estate.

NEVIUS, RANDOLPH and CARPENTER, Justices, and PORTER. and RISLEY, Judges, concurred in this opinion.

SCHENCK, Judge, dissented.

Decree affirmed.