## SAVING INVESTMENT AND TRUST COMPANY

*v.*

## MARY F. CROUCH et al.

[Submitted January 18th, 1922.   Decided February 6th, 1922.]

1. A bequest of a designated number of shares of stock in a certain corporation is not specific, even though the testator may at the time own the exact number of shares given, so that such bequests do not pass to the legatees at the death of the testator, and the dividends paid fall into the residue.

2. Evidence *aliunde* is admissible in aid of the intention expressed in the will, but it cannot be admitted to supply an intention which is nowhere disclosed in the will itself.

3. The facts that the testator at the time of executing his will had his corporate stock divided into numerous certificates, any one of which of a similar denomination would satisfy the legacies given in the will, and that he selected some of the certificates, and sent them to legatees during his lifetime in satisfaction of bequests to them, do not establish that the legacies were specific and not general, even if such circumstances could be considered to determine that question.

---

On final hearing.

*Mr. Jerome D. Gedney,* for the complainant.

*Mr. Arthur H. Bissell,* for the defendant Crouch.

*Mr. Benjamin F. Weinberg,* for the defendant Byington.

*Messrs. Wall, Haight, Carey & Hartpence* (*Mr. Albert C. Wall*), for the remaining defendants.

BACKES, V. C.

Edwin M. Green died leaving an estate consisting mainly of shares of capital stock of a railroad company and of four industrial corporations. The rest was cash, household effects and personal belongings. By the fourth item of his will he bequeathed the shares of stock to his sister, Mary F. Crouch, and to his nephews and nieces by fourteen separate bequests in form, of which the following are typical:

> "*Fourth*—I make the following bequests:
>
> "(*a*) To my sister, Mary F. Crouch, of Van Wert, Ohio, two hundred (200) shares of the stock of the Dallas Manufacturing Company of Huntsville, Alabama, and twenty-five (25) shares of the common stock of the Chicago, Milwaukee and St. Paul Railway Company.
>
> "(*b*) To my nephew, William E. Chinnock, of Oakland, California, forty (40) shares of common stock of the Darlington Manufacturing Company, of Darlington, South Carolina, and twenty-five (25) shares of common stock of the Monarch Mills, of Union, South Carolina."

At the time of the making of the will the testator had shares in the companies named in the bequests in numbers identical with the shares bequeathed, except in the railroad company in which he held two hundred more. He possessed them at the time of his death, with the exception of thirty shares of the industrial stocks which he had delivered to the Byingtons, grandnephew and grandnieces, to whom he had bequeathed corresponding shares. Within the year following the testator's death, dividends were declared on the stocks and paid to the executor. Doubts have arisen as to whether the bequests are general or specific. If they are specific, the gifts passed to the legatees at the death of the testator, and the dividends belong to them; whereas, if they are general, the dividends fall into the residue. The executor asks the advice and aid of the court.

Counsel are not in disagreement that, in form, the legacies are general, not specific, and that the authoritative text-books and cases so hold. I quote one text-writer and cite the cases in this state. In the second note to section 1130, *3 Pom. Eq. Jur.*, it is said, concerning bequests of corporate stock that—

"Where the bequest is merely descriptive generally of the stock, shares, &c., given, the legacy is not specific, although the testator may at the time own stock answering the description, and even may own the exact number of shares given, e. g., as where he gives so much stock, or so many shares, or the like, not using additional words pointing to any identical shares, as 'my' stock, or the stock which 'I now possess,' &c."

*Norris* v. *Thomson, 16 N. J. Eq. 218, 542; Blair* v. *Scribner. 65 N. J. Eq. 498; 67 N. J. Eq. 583; Mecum* v. *Stoughton, 81 N. J. Eq. 319; In re United States Fid. & Guar. Co., 90 N. J. Law 254.*

But counsel for the so-styled specific legatees draws attention to certain circumstances attending the making of the will as indicating indubitably that the testator had in mind the particular shares of which he was then possessed, viz.: At the time of his death the shares held by the testator were divided into lots, each lot being represented by a certificate of stock corresponding as to company and number of shares with the bequests, except in three instances where the division did not conform to the bequests. The grouping of the shares was done by the testator shortly before and soon after he made his will. Another thing alluded to is, that when the testator sent the thirty shares to the Byingtons, ten shares to each, he wrote to them that he was "acting as his own administrator."

The testator's scheme is plain enough, but the difficulty is that so much of it as is found extraneously is not reflected by the testament. No trace of it is discoverable there. Evidence *aliundi* is admissible in aid of the intention expressed in the will, but not to supply the intention. In other words, the intention cannot be sought in the circumstances surrounding the testator at the making of the will, if it is not somewhere seen in the will itself—that is, the will must attach to it the surrounding circumstances to clarify the testator's wish as indicated by his testament. The disposition of one's earthly belongings, after death, is a privilege of the statute and the manner must be found within the four corners of the testament. I find nothing in the document before me to raise these bequests from the category of general to special bequests.

If the surrounding circumstances were available, they would be of little help, and for this reason: At the death of the testator the shares were split up into thirty-two lots of twenty-five shares each, two lots of thirty-five each, two lots of forty each, two lots of one hundred each, and in single lots of fifteen, twenty, twenty-three and twenty-seven shares, each lot being individually certified. Any one of the certificates, like in denomination, would satisfy the allotments made by the will, except in the case of the bequest to Mrs. Crouch, where eight of them would be required. The will does not specify and distinguish or ear-mark any one set of shares from the rest—the test of a specific legacy.

The delivery by the testator to the Byingtons of thirty shares of the preferred stock of the Monarch Mills, accompanied by letters stating that he was "acting as his own administrator," shows merely that he selected that many shares out of the hundred he owned to satisfy their bequests. That they were given in satisfaction appears from his letters and their gracious acknowledgments.

The executor is advised that the dividends fall into the residue.