Complainants are the executors of the estate of Hiram Edwin Scarborough, late of North Plainfield, Somerset County. By their bill they seek a construction of certain provisions of their decedent's will.
The first question: Does the will vest testator's son Paul with an estate in fee-simple in an undivided half of testator's *Page 203 
realty, as tenant in common with his brother Irving or with trustees under the will? This question is prompted by the unconventional arrangement and the awkward phraseology of the will. The instrument, it is conceded by all parties in interest, was drawn by the testator, a man unlearned in the law.
The provisions of the will to which reference will be made in this opinion are:
or trustees "First — I request and direct my executors/hereinafter named to pay and satisfy all my just debts and funeral expenses, and a marker to my plot if not arranged. As my beloved wife is deceased, I write this new testament, but here bear testimony to her beautiful character, devotion, fidelity and loyalty to me.
"Second — I give and bequeath to my sons Paul Claypoole Scarborough, and Irving Johnston Scarborough, equal shares in all my real, and personal property, such equal division of furniture, or furnishings, silver, or other household articles of mine as they may suitably arrange between themselves; Also, of the residue of my estate, following subsequent bequests, or not restricted by other clauses or paragraphs, relating to any portion of the above.
"Third — If either of my sons predecease, or be deceased at the time of my death, their children of the present wedlock shall heir equally of parent portion, and receive any earned income, but not receive the principal thereof until attaining age twenty five.
"Fourth — I give and bequeath the Mother picture to my son, Paul, also my gold cuff links (Mary's gift to me), also, the Marine Binoculars heired from my father, also, to my sons the cherry and walnut chests, heired from my father, — they to make suitable selection of same.
"Fifth — I give and bequeath to my grandchildren equal shares of stock held by me at this time in the Canadian Pacific Ry. Co., The Lehigh Coal Co., and the Pennroad Corporation, or to their parents if they predecease. The above Stock is of nominal value.
"Sixth — In view of the critical conditions confronting my son Irving, he being unemployed, a long time, I deem it prudent that I here stipulate in regard to his share, that he receive not the principal, but the income only derived therefrom. I therefore direct my executors to pay him the income thereof as earned and becomes due; the principal whereof be preserved as far as possible, and be paid to children surviving as stated under clause two. If he decease, the income be paid his widow until the children attain the age of twenty five.
"Seventh — To my niece Hallie I leave the small bureau Cabinet once owned by her grandmother Scarborough.
"To my brother-in-law Dr. H. Leon Jameson I leave my gold watch and chain (gift from Mary), and bear recognition of his great help to me. *Page 204 
"To my nephew Edward Rittenhouse I leave my three vol's (subscription) Shakesphered, the same to be rebound and delivered.
"To my grandaughter Janet I leave the Kodack Camera of her grandmother.
"To my grandson David I leave my trout pole.
"To my grandaughter Nancy I leave the Victrola.
"To my brother-in-law Earle C. Jameson, I leave my gun — gift of the Cowperthwaites.
"To son Paul I leave the Citation on the return of the binoculars from the Navy Dep't signed by the then Secretairy of the Navy Franklin D. Roosevelt, and Check for $1.00 attached.
"Eighth — In reference to any debts owing me by either heirs, my executors are requested to adjust.
"Nineth — My executors in view of the foregoing are not restrained from selling, or reinvesting the funds of my estate as need shall arise, or such reinvestment or sale shall be for the best interests of my estate.
"Nineth — I nominate and appoint my son Paul Claypoole Scarborough, and my nephew Edward Rittenhouse of Lansdowne Pa, or trustees the executors/of this my last will and Testament. In the event of the demise of either I request my brother in-law substitute. And I further order and direct my said executors hereof shall not be required to give security to act as executors, or their now residence in or out of the State of New Jersey."
Testator chose to place the provision disposing of his residuary estate at the beginning rather than at the end of his will, and to follow rather than to precede this provision with specific bequests. Nevertheless, the testator was careful to guard against possible conflict of these provisions and to make his intention clear; in dividing his residuary estate equally between his two sons in paragraph two, he specifically reserved and excepted the articles of personal property later bequeathed by paragraphs four, five and seven.
The provisions of the different clauses of a will are of much greater importance than the relative positions in which the clauses appear in the will. It is an established rule of construction that a court will endeavor to give effect to every part of a will, and within all reasonable limits will attempt to reconcile two apparently inconsistent provisions rather than to ignore either, or to declare both void. Rules of construction were formulated to aid courts in ascertaining the intention of testators. Where, as here, it is clear on the face of the will that testator intended all of the clauses of his will *Page 205 
to be given effect, these rules serve to confirm the interpretation. Page on Wills § 932; Hendershot v. Shields
(Court of Chancery), 42 N.J. Eq. 317; 3 Atl. Rep. 355; Rogers
v. Rogers (Court of Chancery), 49 N.J. Eq. 98;23 Atl. Rep. 125; Byrne v. Byrne (Court of Chancery), 123 N.J. Eq. 6;195 Atl. Rep. 848. The gift of one-half of testator's residuary estate to Paul Claypoole Scarborough is absolute; he is therefore vested with an estate in fee-simple, as a tenant in common, of one-half of all the real estate owned by testator at the time of his death.
The second question is: Did the testator, by the sixth paragraph of his will, create a valid trust? The object to be attained in construing a will is to determine the intent of the testator as gathered from the whole document read in the lightof testator's situation at the time of its execution, and the predominant idea of the testator's mind, if apparent, will be favored as against all doubtful and conflicting provisions which might of themselves defeat it. Peer v. Jenkins (Court ofErrors and Appeals), 102 N.J. Eq. 235; 140 Atl. Rep. 413.
Testator's scheme of disposition is obvious when the will is carefully considered in its entirety. Except for some shares of common stock "of nominal value" and some keepsakes, testator wished his two sons Paul and Irving, if they survived him, to benefit equally from his estate. In the event that either son should predecease him, it was the testator's plan that the children of the deceased son should take their father's portion. The sons' children were, however, to receive only the income earned thereon until they attained the age of twenty-five years; then, and then only they were to receive the principal. Because of "critical conditions confronting" his son Irving, testator did not deem it wise to make an outright gift to Irving of the principal of his half of the residuary estate; testator directed that Irving should be paid only earned income during his life, and that the principal should be paid to Irving's "children surviving" when they attained the age of twenty-five years; and if, before the children attained the stipulated age, Irving died leaving a "widow," she was to be paid the income until the principal became payable to the children. *Page 206 
At this point paragraph six and the first of the two paragraphs designated "nineth" should be read together.
No express words directing the creation of a trust are to be found in the will. Nevertheless, a testamentary trust may be found by implication where the intention of the testator to set up a trust is manifest, or testator's obvious purpose cannot be executed except through such an instrumentality, or the executors are given duties to be discharged beyond their ordinary functions as executors. The words used by the testator in the will before me clearly and unmistakably indicate a purpose to create a trust. In the first and the ninth paragraphs of testator's will he made significant insertions; in the first, after directing that his executors satisfy his debts, pay his funeral expenses and, if necessary, provide a grave "marker," he wrote above and after the word "executors" the words "or trustees;" and in paragraph nine, after nominating his son Paul and his nephew Edward Rittenhouse to be the executors of his will, testator wrote above the word "executors" the words "or trustees." In paragraph six testator directed that his executors "preserve" half of his residuary estate until it could be paid to children of Irving surviving their father and attaining the age of twenty-five, and that the executors pay to Irving "the income only." In paragraph nine testator declared that, "in view of the foregoing," the executors "are not restrained" from selling assets of the estate or from reinvesting estate funds. The duties imposed by testator upon his executors are far beyond the ordinary functions of executors, and testator's directions may only be carried out through the establishment of a trust. The rule declared in Steinhart v.Wolf (Court of Chancery), 95 N.J. Eq. 132;122 Atl. Rep. 886, that an implied trust will not arise unless the person or object intended to be benefited thereby is properly and definitely described and the amount of property to which the trust shall attach is sufficiently defined, presents no obstacle to the declaration of an implied trust in the present instance. Testator clearly and definitely described the persons he intended to benefit and dedicated the one-half of his residuary estate to the effectuation of that purpose. *Page 207 
The next question is: Are the bequests made by the testator under the fourth, fifth, seventh and eighth paragraphs of his will valid? This inquiry was also prompted, I am advised, because of the fact that the residuary clause of the will was placed by testator before these paragraphs providing for specific bequests. The doubt suggested by complainants is resolved when the second and sixth paragraphs and the first of the two paragraphs designated as the ninth are read together, and the second paragraph is considered as if transposed to the end of the will. As I have already observed testator specifically excepted the personalty bequeathed in paragraphs four, five, seven and eight from his gift of the residue of his estate. The bequests in the fourth, fifth, seventh and eighth paragraphs of testator's will should be given full force and effect.
The next question to be answered is: Are the complainants, as executors, vested with power of sale of the real estate of which testator died seized? I have already held that testator intended to create and did create a trust. After testator had by implication created this trust he referred thereto in paragraph nine and conferred upon his executors the power to sell assets of the estate and to invest and reinvest funds.
In Restatement of the Law, Trusts, § 190, it is said:
"The trustee can properly sell trust property if * * * such sale is necessary or appropriate to enable the trustee to carry out the purposes of the trust, unless such sale is forbidden in specific words by the terms of the trust or it appears from the terms of the trust that the property was to be retained in specie in the trust. * * * The trustee can properly sell trust property if it appears from the language used in the trust instrument that a power of sale was intended to be conferred upon him, although it is not conferred in specific words. Thus, an authorization or direction to the trustee to `invest and manage,' or to `invest and reinvest,' or to `dispose of' the trust property, may confer a power of sale both of real and personal property. In determining the meaning of a provision in the trust instrument resort can be had to the whole of the instrument and to the surrounding circumstances."
In Girard Trust Co. v. Cheeseman, 93 N.J. Eq. 266;115 Atl. Rep. 745, Vice-Chancellor Leaming said (at p. 268): "In this state it has long been an established rule of construction *Page 208 
of wills that where from the terms of the entire will it is clear that some duty has been imposed by testator upon an executor or trustee which necessarily carries with it a power of sale in order to enable him to perform the duty, a power of sale will be understood to have been given by implication." Our Court of Errors and Appeals, in the case of Fidelity Union Trust Co. v.Mintz, 125 N.J. Eq. 52 (at p. 55), declared: "Where a trust does not expressly give the power of sale, it will be implied from the fact that the trustee is charged with a duty which cannot be performed without the power of sale, and in the present case, the trustee would be unable to carry out the terms of the trust without such right."
The executors and trustees, in the present instance, in order to set up and carry on the trust herein declared, are vested with a power of sale of the real estate of which testator died seized.
The fifth question is: If Irving has only a life estate, does the gift of the corpus violate the rule against perpetuities? "`The rule against perpetuities is in force in this state as a part of the common law. * * * That rule requires that all future interests, legal or equitable, in realty (except dower and curtesy and rights of entry for conditions broken) or personalty, which are contingent and indestructible, must be such as necessarily to vest, if at all, within the term measured by the life or lives of a person or persons in being at the time of the creation of the interest and twenty-one years thereafter; otherwise they are invalid and void.' McGill v. Trust Companyof New Jersey, 94 N.J. Eq. 657; 121 Atl. Rep. 760; affirmed,96 N.J. Eq. 331; 125 Atl. Rep. 108. See, also, Camden SafeDeposit, c., Co. v. Scott, 121 N.J. Eq. 366;189 Atl. Rep. 653. The perpetuity rule is only applicable to the vesting of estates, not to their enjoyment. If the estate vests within the time limited by the rule then it has no application." Clark v.Union County Trust Co. (Court of Chancery), 127 N.J. Eq. 221,224. As was well said by Vice-Chancellor Sooy, the rule against perpetuities is a rule against postponing the vesting of estates for a period beyond lives in being and twenty-one years thereafter and is *Page 209 
not applicable to the possession or enjoyment of such estates.Guarantee Trust Co. v. Latz, 119 N.J. Eq. 194, 197;181 Atl. Rep. 645.
In the instant case the time specified when the gift is to become effective is annexed to the time of payment only and not to the gift. Testator merely postponed the enjoyment of the remainder for the convenience of letting in the trust. This is to be clearly and fairly deduced from the entire will. The gift over to the children of Irving under the sixth paragraph of the will becomes effective immediately on his death — an event which is certain to happen. Testator, by implication, created a trust for the benefit of his son Irving during the latter's lifetime; the remainder is vested and the rule against perpetuities does not apply.
The last two questions suggest themselves by reason of the fact that Irving Johnston Scarborough is the father of a legitimate child and of two illegitimate children. The legitimate child is Frances Marie Scarborough; the illegitimate children are the boy and the girl known as David and Nancy Scarborough. In paragraph five testator bequeathed to his "grandchildren" certain shares of stock of nominal value. In paragraph six testator's gift in remainder was "to children [of Irving] surviving as stated under clause two." The questions posed are: Should the defendants David and Nancy be included in the class "grandchildren" to whom the bequest is made in paragraph five? Should they be included in the class defined in paragraph six as "surviving children as stated under clause two?"
The defendant Frances appears by guardian and counsel, as do the defendants David and Nancy. For Frances it is conceded that David and Nancy should share in the gift of stock bequeathed by testator to his "grandchildren." This concession is, admittedly, predicated upon a consideration of the language of the will explained by the circumstances and conditions which surrounded the testator at the time he executed it. To prove some of these circumstances and conditions counsel for Frances offered her mother, Mae E. Scarborough, as a witness. Mrs. Scarborough testified that she was married to Irving on November 28th, 1923; that Frances *Page 210 
was born of that marriage on February 12th, 1925; that testator at that time visited her home and presented a coach to his granddaughter; that in 1929 Irving deserted her and her child; that she then wrote to testator appealing for financial assistance; that testator replied, refusing such assistance, and that, thereafter, she never saw the testator nor did the testator see Frances. She produced the letter testator had written to her and it was admitted in evidence.
Edward Rittenhouse, a nephew of the testator and an executor of his will, was called as a witness for complainants. He testified as to the relationship of Paul and Irving to the testator; that Paul has two children; that at the funeral of testator's second wife Irving appeared at his father's home accompanied by David and Nancy and "his wife" Alberta. Jane Baulsier was produced on behalf of the defendants David and Nancy. Mrs. Baulsier was testator's housekeeper over the last four years of his life. She too testified as to the relationship of Paul and Irving to the testator, and as to Paul's children. When this witness was questioned as to Irving's children an objection was interposed and it was insisted that such evidence would be "immaterial, irrelevant and incompetent" because there was only one person, Frances, who could answer the description "children of the present wedlock."
Evidence in aid of the intention of the testator as expressed in his will was legally admissible and is available to me in construing the instrument. It is true, as argued for Frances, that some courts have declared extrinsic evidence inadmissible to explain or vary "unambiguous" terms of a written will. Such statements are, however, misleading. The meaning and application of the words and terms of a will can not be understood until the property and the beneficiaries have been identified and this can be accomplished only by reference to extrinsic evidence. For instance, there is no mention of Frances Marie Scarborough in the will, yet she claims a right to take under clause five as a grandchild of the testator, and under clause six, if she survive her father, as his child "of the present wedlock." How is she to qualify as a grandchild of testator, or as a surviving child of Irving if I may not *Page 211 
have the benefit of extraneous evidence? By way of contrast: David and Nancy are specifically named in the will; testator said: "To my grandson David I leave my trout pole. To my granddaughter Nancy I leave the Victrola."
Counsel for Frances, in support of his argument against the admission of any extraneous evidence which might be helpful to David and Nancy, called my attention to certain statements taken from the opinions in the following cases: Maxwell v. Maxwell,122 N.J. Eq. 247, 250; 193 Atl. Rep. 719; Rausch v. Libby,132 N.J. Eq. 527, 531; 29 Atl. Rep. 2d 378; Gallagher v.Venturini, 124 N.J. Eq. 538; 3 Atl. Rep. 2d 157; McDonald
v. Clermont, 107 N.J. Eq. 585, 588; 153 Atl. Rep. 601; FirstNational Bank of Toms River v. Levy, 123 N.J. Eq. 21;195 Atl. Rep. 820. The statements emphasized, standing alone, lend color to counsel's contention but, in each instance, as an examination of the opinions will demonstrate, the court was careful to point out that evidence intended to disclose the situation and surroundings of the testator and the objects and persons with whom he was familiar and upon whom his affections were resting was competent to show what testator meant by what he said in his will, and that it was only when the intention sought to be proved by extrinsic evidence was nowhere disclosed in the will that it was incompetent.
The distinction to be observed with reference to evidencealiunde the will is this: The intention of a testator cannot be sought in the circumstances surrounding him at the making of the will if it is not somewhere seen in the will itself. Otherwise stated, extrinsic evidence is admissible in aid of the intention expressed in a will, but is not admissible to supply the intention. Saving Investment and Trust Co. v. Crouch (Courtof Chancery), 93 N.J. Eq. 311, 313; 116 Atl. Rep. 696. To aid me in determining and identifying the objects of testator's bounty, I may inquire into every material fact relating to the persons claiming to be interested under the will, and to the circumstances of the testator, and of his family and affairs. I may and should do this to place myself, in so far as that may be possible, in the situation in which the testator was at the time he executed his will. Noice v. *Page 212 Schnell (Court of Errors and Appeals), 101 N.J. Eq. 252,272; 137 Atl. Rep. 582; Gillespie v. Gillespie (Court ofChancery), 96 N.J. Eq. 501; 126 Atl. Rep. 744; Eckermann v.Eckermann (Court of Chancery), 111 N.J. Eq. 112;161 Atl. Rep. 806.
The facts proven in aid of the intention expressed by testator in addition to those already detailed, briefly are: After the desertion of his wife and child and before the execution of testator's will, Irving had entered upon a course of illicit cohabitation with one Alberta Knowles. He established a residence in Linden, New Jersey, and there Alberta was known as his wife. Testator visited them at Linden and became very fond of Alberta and of her two children by Irving, David and Nancy. After the children entered school testator took a keen interest in their educational progress. He wrote to the children and to their mother and he received letters from all of them. It also clearly appears that Irving was a disappointment to his father. In the letter written to Mae E. Scarborough following her appeal for assistance, testator said: "No words of mine can ever tell the sorrow and heart-sick, the worthless doings my son has brought me. To think his splendid endowment is so wasted is almost beyond belief." Much later, in a letter to Alberta, testator expressed pleasure at the fact that Irving had entered upon some new business enterprise, and the hope that it would be successful, and, in the sixth paragraph of his will testator spoke of "the critical conditions confronting my son Irving, he being unemployed a long time." It was also proven that testator was an austere and a very religious man; one who always lived up to the moral code and wished other people to do likewise.
Let us then look well to the four corners of the will. In the light of the circumstances which surrounded testator when he made paragraph five a part of his will, what is the intent he expressed therein? His gift was "to my grandchildren equal shares of stock, * * * or to their parents if they predecease." Frances was, whether testator believed the marriage of her parents had been dissolved or not, a grandchild of the testator; she must be included in the class *Page 213 
to take. In paragraph seven of his will testator described David as his "grandson" and Nancy as his "grandaughter." Should they also be included in the class "grandchildren?" "The general rule is that the same words in different parts of a will, used to express a common purpose, are presumed to have been used in the same sense." Peer v. Jenkins, supra. Such is the rule of construction; what of testator's expressed intent? In a letter written to the mother of David and Nancy, April 19th, 1939, testator addressed her as "Dear Alberta." He expressed his pleasure at the fact that David and Nancy were "doing good work at school." In commenting on the new business venture of Irving, he said, "I hope it will * * * result in renewed happiness for all of you." In concluding the letter he said, "Tell David and Nancy I'll write a note to them in my next as I am tired to night. I send my love and all good wishes. Love Father." Testator's regard for David and Nancy was further evidenced in the testimony of his housekeeper; to her he proudly exhibited letters he received from Nancy.
It was suggested by counsel that Irving had, prior to the making of the will, successfully deceived his father into believing that his marriage to Mae E. Scarborough had been legally dissolved and that he was lawfully married to Alberta Knowles. There was no direct evidence proving knowledge or lack of knowledge on the part of the testator as to the true status of the relationship between Irving and Alberta, but it is evident on the face of the will that testator regarded their two children as his grandchildren. It is equally evident that testator held no abiding regard for Mae E. Scarborough or her daughter Frances: Irving lived with his wife and child only about three years before deserting them; at the time of the desertion they lived in Philadelphia; from there Irving's wife wrote the testator for assistance; testator's reply, dated January 4th, 1927, is in evidence. Testator chose this form of address: "Dear Mrs. Scarborough." In refusing financial assistance he said that he could not find it "reasonable" or "possible." He suggested that Mrs. Scarborough find someone to look after her baby and that she seek employment. He concluded his letter thus: "Sincerely *Page 214 
yours, Mr. Scarborough." Testator never saw his daughter-in-law or his granddaughter Frances after he wrote that letter. They are not mentioned in his will, but to "grandson" David the testator gave his "trout pole" and to "grandaughter" Nancy, his "Victrola."
I am not unmindful of the principle that the term "children" or "grandchildren" in a will, prima facie, means legitimate children or grandchildren, nor have I overlooked the rule that, where there is nothing more in the will, the circumstance that the person whose children or grandchildren are referred to has illegitimate children or grandchildren will not entitle the latter to take. Those rules have no application here for on the face of the will and upon a just and proper construction of the words used in it, we find a clear expression of the testator's intention of using the term "grandchildren" in paragraph five, not merely according to its prima facie meaning of legitimate grandchildren but according to a meaning which would apply to and include the two illegitimate children, David and Nancy. Hill v.Crook (Lord Cairns), L.R. 6 H.L. 265; 42 L.J. Ch. 702;Heater v. Van Auken (Court of Chancery), 14 N.J. Eq. 159;Tuttle v. Woolworth (Court of Chancery), 74 N.J. Eq. 310;77 Atl. Rep. 684; Lembeck v. Harms, 98 N.J. Law 95;118 Atl. Rep. 537; Bank of Montclair v. McCutcheon, 107 N.J. Eq. 564;152 Atl. Rep. 379; The New Jersey Title Guarantee and Trust Co.
v. Elsworth, 108 N.J. Eq. 229; 154 Atl. Rep. 602.
Should David and Nancy Scarborough be included in the class "surviving children as stated under clause two," defined in paragraph six? It is contended on behalf of Frances that they should not. First, it is argued that testator obviously intended, in using these words, to limit his gift to Irving's surviving children "of the present wedlock." With this I agree in part; I am convinced, and find, that testator, in limiting his gift to "children of the present wedlock" intended these words, when added to paragraph six of his will, to describe the relationship or association of Irving and Alberta. To conclude otherwise would be illogical. Irving had lived with two women; he had had a child by one and two children *Page 215 
by the other; after the birth of Frances, Irving deserted her and her mother; after Mae E. Scarborough had sought financial assistance of the testator, the latter had no further contact with her or with her daughter Frances; when Irving and Alberta later established a home near the testator he frequently visited them and when the two children were born to them, he came to love those children; notwithstanding testator's austerity, his religious beliefs and his expectation that those with whom he associated would live up to the accepted moral code, he regarded Alberta as his daughter and, by his will, he published to the world his insistence that Alberta's children were his grandchildren.
The circumstance that testator wrote his own will and was not learned in the law must be given consideration. Wunderlich v.Bleyle (Court of Chancery), 96 N.J. Eq. 135, 138;125 Atl. Rep. 386. Counsel for the defendant Frances Marie Scarborough agrees that the reference to "clause two" in paragraph six of the will might better have been written "clause, or paragraph three." Nowhere in paragraph two did testator make any reference to "surviving children;" paragraph three, in its entirety, concerns that subject. Testator used the word "under" — to children surviving as stated "under" clause two. Directly "under" (in the sense of below) paragraph two testator wrote the clause which limited the class to children "of the present wedlock." Paragraph three, in actuality, is a clause, and continues and concludes the thought expressed in paragraph two. In paragraph two testator gave his residuary estate to Paul and Irving. Then, conceiving that they might not survive him, testator wrote paragraph three. Later when he wrote paragraph six he was consistent; Irving, although not to be given the principal of his share of the residuary estate, was to enjoy the income for life; his children were then to take, but not to "be paid" the principal until they attained the age of twenty-five years. To make certain of consistency, testator defined the surviving children to take, "as stated under clause two."
It is contended for Frances, that as she is the only child of Irving born of "wedlock," she alone can take under paragraph six of the will and testator's limitation of his gift to *Page 216 
surviving children of Irving of "the present wedlock." It is urged that the word "wedlock" has the technical signification of "the ceremony or state of marriage; matrimony; marriage," and that I must accept that definition in interpreting the will. I think not. The rule is well established in this state that the intention of the testator is the law of wills and that when his intention is ascertained, if not in violation of the rules of law, it will prevail over technical rules and words in their technical or even ordinary meaning. Holbrook v. Greene
(Court of Chancery), 125 N.J. Eq. 337, 339. In paragraph five testator's gift was to his "grandchildren." Testator chose the word "grandchildren" and permitted it to stand without limitation or qualification; testator's designation elsewhere in his will of David as his "grandson" and Nancy as his "grandaughter" demonstrated his intention to include them in this gift to "grandchildren." Von Fell v. Spirling, 96 N.J. Eq. 20, 23;124 Atl. Rep. 518, modified in another particular, 97 N.J. Eq. 527;128 Atl. Rep. 611.
In paragraph six testator's gift in remainder was not to Irving's "child," it was to "children." In using the plural form testator did so with knowledge that there had been but one child born to Irving and Mae; that two children had been born to Irving and Alberta. Further, testator specifically limited the class "children" to those "of the present wedlock." But, it is further contended, I must here apply the rule that illegitimate children are not to be included in a gift to children generally, unless the testator's intention to include them is manifest from the will itself. That is the point! It is manifest from the will before me, explained by the proven circumstances and conditions surrounding the testator at the time he made that instrument, that testator intended the description surviving children of Irving "of the present wedlock" to designate David and Nancy and any other children born to Irving and Alberta. It logically follows, and I hold, that testator, in choosing and employing those words, intended to exclude Frances Marie Scarborough.
The power of this court to effectuate the manifest intent of a testator by inserting omitted words, by altering the collocation *Page 217 
of sentences, or even by reading his will directly contrary to its primary signification, is well established. This power, when necessary, is exercised to prevent the intention of the testator from being defeated by a mistaken use of language. The question presented is simply this: Will the court execute the clear intent of the testator not fully or clearly expressed in the will, or will it, by a strict technical adherence to the form of words and their literal meaning, suffer the intention of the testator to be defeated? Van Houten v. Pennington (Court of Errors andAppeals), 8 N.J. Eq. 745, 749.
A decree will be advised in conformity with these conclusions.