## HAYES' EXECUTORS *vs.* HAYES and others.

1. A codicil revoking in express terms a legacy in the will, because the testator had provided the legatee with a permanent home, when in fact he had not so provided, will not be declared inoperative because made by mistake, no other evidence of the mistake being shown. The testator must have known whether he had provided such home.

2. Where a will is divided into paragraphs, clearly defined in the usual way, a gift to legatees specified in the fourth paragraph will not be held to be by mistake for the legatees in another paragraph from some probability that the testator would more likely have given it to these last legatees. To change the express and definite words of a bequest it must clearly appear that the testator did not intend what he said, and this by the provisions of the will.

The argument in this case was had upon the bill and the answer of the infant defendants.

*Mr. W. Vanderpool*, for complainants.

*Mr. J. W. Taylor*, for defendants.

THE CHANCELLOR.

This suit is to settle the construction of the will of Oliver J. Hayes, the testator of the complainants, and for directions as to the execution of its provisions by them. The will has a codicil annexed, out of which all the questions arise.

The original will, in its mechanical construction, consists of thirteen paragraphs besides the testatum clause, each paragraph distinctly marked in the usual way by a blank space between it and the end of the preceding one, and by commencing the line with a capital letter at a distance from the margin. There is no difficulty in distinguishing and numbering the paragraphs.

The fourth paragraphs gives $40,000 to his executors to be invested, the interest to be paid to his wife for life, and then to his two daughters for their lives, and at their death to their issue, who were to receive the principal when the youngest should come of age.

The sixth paragraph gives $15,000 to his executors to be invested, the interest to be paid to his brother, John C. Hayes, during his life, and after his death to his children respectively, until they arrive at twenty-one years of age; each to receive his share of the principal upon arriving at

twenty-one. If neither of these children reach twenty-one, or leave issue, he divided the fund in specified portions among eight legatees.

The seventh paragraph gives the interest of $1000 to Mrs. Emeline Baldwin, and the principal at her death to her heirs-at-law.

The eighth paragraph gives the interest of $1000 to Crus Durant and Camilla Durant for their lives, and the principal at their death to the Methodist Episcopal Society for promoting Christian worship at Buenos Ayres. And to this last society he gives $500 in the ninth paragraph.

In the tenth paragraph he states that the bequests in his will amount to $70,000, and directs that if the net proceeds of his estate should amount to more or less than that sum, the bequests should each be increased or diminished, as the case might be, and in proportion to such bequests, and thus made to absorb his residuary estate.

To this will, executed May 18th, 1856, there is a codicil, dated June 6th, 1860. In this he declares "that having since the date of said will provided my brother John C. Hayes with a place for a permanent home, I do hereby reduce the amount bequeathed to my executors for his benefit from $15,000 to $10,000. I also reduce the legacy of $1000 to the Newark Female Charitable Society to $500; and I also revoke and wholly cancel the legacies of $1000 and $500 given in said will to the American Board of Foreign Missions, and the Methodist Episcopal Society for promoting Christian worship at Buenos Ayres. These deductions amount to $7000. And it is my will that the said amount be apportioned by my executors, and paid over by them among and to the remaining legatees, particularly named in the fourth, sixth, and seventh paragraphs of my said will, according to the amount they are entitled by said will to receive."

The testator had furnished to his brother, John C. Hayes, a residence at Summit, New Jersey, upon which he had resided, but did not convey the title to him; so that at the

testator's death his right to remain there ended. The first question raised is, whether the revocation of $5000, part of the legacy to John, is not void as made under a mistake. In *Campbell* v. *French*, 3 *Ves.* 321, Lord Eldon held that a revocation of a legacy to nephews of the testator living in a foreign country, whom he had never seen, stated to be made because they were dead, when in fact they survived the testator, was void, because made under mistake and through wrong information. But in this case no mistake is shown; he had not made a provision that was permanent, but he must have known whether he had so provided or not. He had provided a home, and may have intended to make it permanent at some future time, and omitted to do so, either from neglect or because he changed his mind, which he had a right to do. In *Kennell* v. *Abbott*, 4 *Ves.* 808, a bequest by a woman to a man, to whom she had been formally married, and with whom she was living as her husband, but who had a former wife living of which she had no knowledge, she styling him in the bequest her dear husband, was held to be void. It was made under a clear mistake, into which she was led by the fraud of the legatee.

This case does not fall within the principle of these decisions, and it would be dangerous to extend it. It would cause every recital of a faithful wife, or trusty friend, or honest servant, to be inquired into to affect the validity of the bequest.

The next question arises upon the allegation that the testator in disposing of the $7000, the amount of the legacies revoked by the codicil, had made a mistake in the number of the paragraphs; he gives this amount to the legatees particularly specified in the fourth, sixth, and seventh paragraphs of the will. That instead of the fourth, sixth, and seventh, he intended the fourth, seventh, and eighth. This is contended for on the ground that it is evident from the provisions of the will, that he did not intend to take from his brother $5000 in one sentence, and give him 15-56ths of $7000 in the next sentence. That he would more pro-

bably have taken from him directly $3175, or such amount as would have effected his purpose.  I do not think this a natural or probable conclusion.  He had provided, or intended to provide, a residence worth $5000.  For this he intended to deduct the equivalent.  When he revoked the other legacies he found at his disposal the amount of them and this $5000, and he disposed of it to his wife and chil-dren, and his brother, and Mrs. Baldwin, as the objects for whom he most cared.  He did it in general terms which best expressed his object, and which obviated the necessity of calculation.

As to the disposition of the residue of the estate after payment of these legacies, it must be divided among them in proportion to the amount of each after this disposition of the $7000 added to them by the codicil.

The proportion of the $7000 and of the residue of the estate to be paid to John C. Hayes, must be calculated upon $10,000, that being the amount to which his legacy is reduced by the codicil.