This bill is for the construction of the last will and testament and eight codicils thereto of James A. Bradley, founder of Asbury Park, who died June 6th, 1921, leaving an estate valued at more than a million dollars. The will bears date June 26th, 1896, and bequeaths all the testator's personal estate to the trustees therein named, and devises all his real estate therein described to them, except a parcel of land in Ocean Grove, devised to the Ocean Grove Camp Meeting Association. Of the lands thus devised in trust, a parcel at the head of Wesley lake was to be conveyed to Helen M. Bradley, testator's wife, or to her heirs if she predeceased him, and three parcels, Deal lake, Sunset lake and the northerly half of Wesley lake were to be conveyed to Asbury Park for public purposes, and the remaining parcels were ultimately to be sold. The proceeds of the lands to be sold, together with the proceeds of the personal property, were bequeathed to eight legatees in equal shares, one being the Ocean Grove Camp Meeting Association. The rest and residue of the real estate (there was some other than that described in the will) was devised to the testator's wife and *Page 503 
brother-in-law as joint tenants, over to the wife's heirs-at-law if she and the brother-in-law predeceased the testator, which they did.
By the second codicil (January 12th, 1906), lands in Ocean Grove were devised to the Ocean Grove Camp Meeting Association, and the bequest in the will to the association was revoked.
By the fifth codicil (June 11th, 1909), "all the rest, residue and remainder of my estate not devised or bequeathed by my last will and testatment, or any codicil heretofore made. or this codicil," was given to the testator's wife, over to her estate, and to pass by her will if she predeceased the testator.
By the sixth codicil (January 17th, 1914), "all the rest, residue and remainder of my estate not devised or bequeathed by my last will and testament, or any codicil heretofore made, or this codicil," was given to the "Home for the Aged, No. 63 Clark avenue, Ocean Grove, New Jersey."
Only the substance of the voluminous will and codicils necessary to the questions involved has been stated.
The seventh codicil (May 3d 1916) reads:
"First. I hereby revoke any and all legacies given and bequeathed in any and all former wills and codicils, and do direct that the following shall be the only bequests distributed in my estate.
"Second. I do hereby give and bequeath to each of the following persons and institutions or corporations, the sum of five thousand [$5,000] dollars."
Here follows the names of fourteen relatives, three being Josephine Hewitt, Helen Jackson and Minnie Hueston, and the names of two employees. Then follows:
"Churches at Asbury Park, N.J., as follows: First Methodist, Episcopalian, Reformed Dutch, Baptist, Lutheran, Presbyterian, Ballard Memorial Church, Catholic, Christian Scientist, Jewish Synagogue, Zion Methodist (colored), Mt. Pisgah Baptist (colored) and Episcopalian (colored).
"Churches at Bradley Beach, N.J., as follows: Methodist, St. James' Episcopal and Catholic.
"Churches at Avon. N.J., as follows: Methodist and Baptist."
 (Fifteen other institutions are named.) *Page 504 
"Third. I give and bequeath to my executor the sum of five thousand [$5,000] dollars to be held in trust, and direct him to pay the income therefrom to my nephew William Dickinson during the term of the life of said William Dickinson, and on his death to pay the principal to the Society for the Prevention of Cruelty to Animals, at Asbury Park, N.J., if incorporated; if not, as soon after as a society for this purpose is incorporated.
"Fourth. I give and bequeath to my executor the sum of five thousand [$5,000] dollars, to be held in trust, and to pay the income therefrom to the widow of Anthony Comstock of the city of New York, during the term of her natural life, and on her death to pay the principal to the Society for the Prevention of Crime in the City of New York.
"Fifth. I give and bequeath to the following-named persons, who are now in my employ, the following sums:"
(Eight employes are named and $500 given to each.)
"Sixth. I give and bequeath to the widow of George Truax, who formerly resided at Asbury Park, N.J., and now lives several miles west of Asbury Park, the sum of five hundred [$500] dollars.
"Seventh. I give and bequeath to George Morrow [colored], a former employe, the sum of three hundred [$300] dollars.
"Ninth. All the rest, residue and remainder of my estate I give and bequeath to the aforenamed legatees in the proportion or on the percentage that the aforementioned legacies are given to them, respectively.
"Tenth. I direct that the legacies herein provided for shall be a charge on by real estate, and I direct my executor, and give him full power of sale, to sell any and all of my real estate to pay said legacies, and give him power to execute deed or deeds therefor.
"Twelfth. For the purpose of making this codicil and my said will final, effectual and conclusive upon all my heirs, legatees and next of kin, I do hereby declare that if any of my heirs, legatees or next of kin named or not named herein shall, directly or indirectly, or in any manner, interfere with or delay the settlement of my estate, or attempt to break or change my said will or this or any other codicils thereto, or to interfere with or make null any provisions thereof, such act shall ipso facto
operate and be effectual as a release of all estate, right, title, interest or claim of such heir, legatee or next of kin to any of my estate. Any provision of my said will or of this or any codicil thereto in favor of such party, I hereby abrogate, make null and void, and the property bequeathed or devised to such person, institution or corporation shall immediately revert and form a part of my residuary estate; and I further declare that my heirs, next of kin and legatees shall under no circumstances be entitled to any other or greater interest in my estate than is given in my will and this or any other codicil thereto.
"Thirteenth. I hereby ratify and confirm my said will and the appointment of the executor therein named, except in so far as the same is changed by this, a codicil thereto." *Page 505 
The eighth codicil (March 3d 1919) provides:
"First. In lieu of the legacies of five thousand [$5,000] dollars each to Josephine Hewitt, Helen Jackson and Minnie Hueston, I give and bequeath to said Josephine Hewitt, Helen Jackson and Minnie Hueston the sum of fifteen thousand [$15,000] dollars to each.
"Second. I give and bequeath to the hospital located on Asbury avenue, in Asbury Park, N.J., the sum of five thousand [$5,000] dollars.
"Third. In lieu of the legacies of five thousand [$5,000] dollars each, provided in the second clause of the codicil to my will bearing date the third day of May, one thousand nine hundred and sixteen, and given as follow:"
The churches and institutions, except three institutions, are designated precisely and in the order as they appear in the second clause of the seventh codicil, and then is added:
"I give and bequeath to each of the aforenamed the sum of one thousand [$1,000] dollars, i.e., I reduce the aforesaid legacies as originally provided for in the aforesaid codicil from five thousand [$5,000] dollars to one thousand [$1,000] dollars in each.
"Fourth. As William Dickinson is now deceased, I make null and void the legacy of five thousand [$5,000] dollars given and bequeathed by my executor in trust for him by the third clause of the aforesaid codicil.
"Fifth. As the widow of Anthony Comstock is now deceased, I make null and void the legacy of five thousand [$5,000] dollars given and bequeathed to my executor in trust for her by the fourth clause of the aforesaid codicil.
"Sixth. As Sylvester Smith and Edward Howland, named in the fifth clause of the aforesaid codicil, are now deceased, I make null and void the legacies given to them by the aforesaid codicil.
"Seventh. The widow of George Truax, named in the sixth clause of the aforesaid codicil, is now the superintendent of the poor farm near Asbury Park, New Jersey.
"Eighth. * * * In all other respects I ratify, confirm and republish my aforesaid will and my aforesaid codicil, bearing date the third day of May, in the year one thousand nine hundred and sixteen."
The final testamentary scheme is obvious. Lands in Ocean Grove were devised to the Ocean Grove Camp Meeting Association. All other lands described in the will were devised to the trustee to convey the lot at the head of Wesley lake to the heirs-at-law, except one, of testator's wife, deceased; to convey Deal lake and Sunset lake and the northerly half *Page 506 
of Wesley lake to Asbury Park for public use, and to sell and convert into personally the remaining described lands. The residue of the real estate was devised to the heirs-at-law, except one, of testator's wife, deceased. The personal estate was bequeathed to the trustees, which, together with the proceeds of the real estate, was to be paid to the persons and institutions named in the seventh and eighth codicils in sums therein stated, and the residue to them proportionately, with a single exception, to be hereafter noted.
1. The direction to the trustees to sell the real estate devised to them, other than the parcels held in naked trust to convey, amounts to an equitable conversion into personal property, appropriatable to the payment of legacies. Tripplett
v. Ivins, 93 N.J. Eq. 202, and cases cited.
2. The first general residuary clause appears in the fifth codicil (June 11th, 1909), in favor of the testator's wife, or of her estate, according to her will, if she predeceased the testator, and the second, in the sixth codicil (January 17th, 1914), in favor of the Home for the Aged, No. 63 Clark avenue, Ocean Grove, New Jersey. Mrs. Bradley died February 13th, 1915. These clauses operated on one-eighth of the personal estate bequeathed by the will to the Ocean Grove Camp Meeting Association, which had been revoked by the second codicil (January 12th, 1906), and had not previously been disposed of. It is not necessary to decide whether the later revoked the earlier clause, for, as to personal property, they were both revoked by the later and ninth item of the seventh codicil, and neither was ever operative as to the real estate, as they included only the estate "not devised or bequeathed by my last will and testament, or any codicil heretofore made, or this codicil," and the residuary of the real estate had previously been devised to the testator's wife and brother-in-law, over to the wife's heirs-at-law, if both predeceased him.
3. The seventh codicil revoked legacies only. It plainly says so; its language is not open to construction. Moreover, the ensuing gifts of legacies only; the gift of the residue in language strictly and technically referable to gifts *Page 507 
of personal property "I give and bequeath;" the ratification and confirmation of the will and the penalty upon heirs, legatees and next of kin who "attempt to break or change my said will, or this or any other codicil thereto," imposed "for the purpose of making this codicil and my said will final, effectual and conclusive upon them," all emphasize the limitation, and the intention that the will and codicils, in so far as they devise real estate, remained intact. The reratification of the will by the eighth codicil is further confirmation.
4. The residuary personal estate, only, passed under the ninth clause of the seventh codicil "to the aforenamed legatees in the proportion or on the percentage that the aforementioned legacies are given to them, respectively," viz., the fifty and more individuals and institutions to whom had been bequeathed $5,000 each; eight employes $500 each, and one $300, and a Mrs. Truax $500. By the eighth codicil four of the legacies to individuals were revoked; three to individuals were increased from $5,000 to $15,000; those to the institutions, except three, were decreased from $5,000 to $1,000, and one was added — $5,000 to Asbury Park Hospital — and the question propounded is, is the residuary estate to be distributed among the legatees in proportion to the amount of their pecuniary legacies fixed by the seventh codicil, or as modified by the eighth codicil? It would seem upon reading the will and operating codicils, and visualizing the testamentary scheme, that the manifest intention of the testator was to apportion the residue according to the last table of pecuniary legacies. That is one's first and enduring impression. By the seventh codicil the testator put his relatives and friends on a par with the institutions; all were to prorate in the distribution of the residue on the basis of $5,000 bequests to each. For reasons of his own, as to which there need be no speculation, he concluded to prefer his relatives and friends, and by the eighth codicil gave, "in lieu of" the legacies given by the seventh codicil, legacies of other amounts, indicating, by the substitution of amounts, an intention to introduce a new division in the apportionment of *Page 508 
the residue, and that it was to be distributed according to the new schedule. Evidence of the testator's trend of mind is that, after he had in plain and unmistakable language substituted the $1,000 legacies for the $5,000 legacies to the institutions, he added, "i.e., I reduce the aforesaid legacies, as originally provided for in the aforesaid codicil, from five thousand ($5,000) dollars to one thousand ($1,000) dollars to each," intimating that the original legacies, in reduced amounts, were to be the measure of participation in the residuary estate. Another and persuasive circumstance that the testator intended the division to be on the basis of the substituted legacies, is that, in effect, the eighth codicil adds to the residuary fund approximately one hundred thousand dollars, and, if the division be on the basis of the seventh codicil, the several institutions would receive more of the residuary estate than they would have if the eighth codicil had not been made. Surely the testator did not intend by the same stroke of the pen to decrease and increase their lot
It is argued that to give greater effect to the eighth codicil than to cut down the primary bequests would violate the established rule of construction of wills, not to permit a codicil to disturb the disposition of wills more than is necessary to give effect to the codicil. The rule has been observed, in its true sense, by giving effect to the testator's intention as fairly disclosed by the codicil. In this connection it is suggested that the value of the rule is lessened, if not entirely lost, when applied, as here, to a codicil that modifies a prior codicil to a will. If this be sound, then, if the two codicils are read together as one, their combined office being to vary or add to the will, less difficulty is experienced in determining the testator's intention to be as already indicated than if the provision of the seventh codicil had been in the will instead of a codicil.
The problem here involved has not been before our courts for decision. In Hayes v. Hayes, 21 N.J. Eq. 265, the bequests aggregated $70,000, and the will directed that if the net proceeds of the estate should amount to more or less than that sum the bequests should each be increased or diminished, *Page 509 
as the case might be, and in proportion to such bequests, and thus made to absorb the residuary estate, and it was held that a pecuniary legatee, whose legacy was cut down by codicil, shared in the residue, according to the reduced amount, on the theory that the pecuniary and residuary legacies constituted but one legacy to each legatee. That does not touch the point under discussion, for here the pecuniary and residuary legacies are clearly several.
Two cases in other jurisdictions in which the question was squarely presented are In re Courtauld, 47 L.T. (N.S. Eng.)647, and Hard v. Ashley, 117 N.Y. 606, in each of which it was held that the division of the residuary estate must be in the proportions of the substituted legacies.
It is claimed that contrary view is held in Colt v. Colt,32 Conn. 422; 19 Blatch. 399; Wetmore v. Parker, 52 N.Y. 450, andPendergast v. Tibbetts, 164 Mass. 270. That is not so. In theColt Case the testator gave five hundred shares of stock in a corporation to his brother for life, remainder to his brother's children, and a number of shares to others, and by another clause the balance of his shares to the legatees proportionately. By codicil he revoked the bequest of five hundred shares to his brother. The court held, upon established rules of construction and attending circumstances, that the revocation of the primary bequest did not evince an intention to do more than to cancel that bequest. Judge Blatchford (19 Blatch. 399) approved the judgment. A conspicuous distinction between that case and the one in hand is that there was a naked revocation of the primary bequest which seemingly confined the operation of the codicil to the primary bequest, whereas here there is a substitution of the primary bequests, evidencing an intention to revoke the residuary legacies pro tanto. In Wetmore v. Parker the testatrix gave to a church and an academy each the sum of $10,000 and legacies to other persons, and the residue of her estate to the legatees proportionately. The primary legacy to the church, it was stated, was to help pay the expenses of building its edifice, that to the academy to be used in rebuilding its academy, and if it should be completed *Page 510 
before the bequest became effective, it was to be used in the improvement of the lot and the purchase of furniture, c. Later, the testatrix gave to the academy $3,000 and by codicil revoked the bequest to the extent of $3,000 and gave instead $7,000. By another codicil she revoked the gift to the church because, as stated, she had concluded to give $3,000 to help defray the debt incurred in building the church, and that it appeared probable that the purpose of her legacy would soon be accomplished. It was held, as apparent upon the face of the will and codicils, that the residuary bequests were not intended to be affected, Chief-Justice Church saying: "They are for different purposes, one for particular, the other for general, purposes. We are justified in inferring that the testatrix had two objects in view, one to aid in completing and furnishing the building, the other to contribute toward a fund for permanent support. The first bequest would, necessarily, be expended at once; the latter might, and, ordinarily, would be, permanently invested." InPendergast v. Tibbetts there were various pecuniary legacies, and the residue of the estate was given to the legatees proportionately. Three nieces were given $10,000 each. By a codicil their legacies were revoked, and in place they were given $5,000 each, and $5,000 each was given to the three other nieces, who were not named in the will. The court held that the three nieces whose bequests were reduced were entitled to share in the residue in proportion to their original bequests, because, as it appeared, it was the intent of the testator to give to each of the three nieces not mentioned in the will $5,000 by taking it from the three mentioned in the will; that no change was made in the total amount of the specific bequests, and that the amount of the residue was therefore not affected, saying that "the testator well may have been content that the sums named in the will should stand, notwithstanding the reduction by the codicil, as the basis for the distribution of the rest and residue. At any rate, that is the way the will reads, and, in the absence of anything in the codicil plainly indicating a contrary intention, we must take the will as it stands." *Page 511 
"These decisions (Colt v. Colt, Wetmore v. Parker, and it applies to Pendergast v. Tibbetts) proceeded upon the plain principle that where a devise is made of an estate, a revocation will not be implied, unless no other construction can be placed upon the language." Hard v. Ashley, supra. In the Colt Case
the rule was strictly applied. In the other two they lent themselves easily to the construction adopted.
5. "The hospital located on Asbury avenue, in Asbury Park, New Jersey" (Asbury Park Hospital), is not entitled to participate in the distribution of the residue of the personal property. The residuary estate was given to "the aforenamed legatees" named in the seventh codicil. The hospital was not one of them. The legacy to the hospital is contained in the eighth codicil, and was a particular gift of a specific amount of money. The testator may have in tended to include the hospital as one of the residuary lega tees, but he did not so express himself in his will, and his intention can be gathered only from that document. Hall v.Severne, 9 Sim. 515; Sias v. Chase, 207 Mass. 372; Pendergast
v. Tibbetts, supra.
6. By the seventh codicil Edward Howland, an employe, was given $500, and by the eighth codicil it was revoked because, as it is there stated, he was deceased. He is still living. When a testator by a codicil revokes a devise or bequest through a mistake appearing upon the face of the instrument the revocation does not take effect. 1 Schoul. Wills (5th ed.) § 410; 1Jarm. Wills *147; Campbell v. French, 3 Ves. Jr. 321; Hayes v.Hayes, supra; Strong's Appeal, 79 Conn. 123.
7. Five hundred dollars was given to "the widow of George Truax, who formerly resided at Asbury Park, New Jersey and now lives several miles west of Asbury Park." For further identification it is stated in the eighth codicil that "the widow of George Truax, named in the sixth clause of the aforesaid codicil, is now the superintendent of the poor farm near Asbury Park, New Jersey." Susan A. Truax was the widow of Charles Truax, and was the superintendent of a poor farm located about three and a half miles west of *Page 512 
Asbury Park. The testator had taken some interest in her poor farm and helped her by some minor gifts. Jane Amanda Coward married one George Truax in 1870, and lived with him in Asbury Park until his death in 1891. In 1895 she married one Coward, of Long Branch, since which time she has been known as Mrs. Coward. Since Coward's death she has been an inmate of the Home for the Aged at Asbury Park. She was not, nor was her husband, ever the superintendent of any poor farm, or had any connection with a poor farm near Asbury Park. The seventh and eighth codicils were made long after she became known as Mrs. Coward. The testator evidently had some doubt as to whether he had properly identified Susan, and hence the explanation in the eighth codicil. The proof is satisfying that the testator intended to give the legacy to Susan A. Truax, the widow of Charles Truax. Proof is admissible to identify the legatee. Moore's Executor v. Moore, 50 N.J. Eq. 554;German-Pioneer Verein v. Meyer, 70 N.J. Eq. 192;affirmed, 72 N.J. Eq. 954.
8. Other beneficiaries were incorrectly designated in the codicils, and their identity has been established by satisfactory proof.
9. By the third item of the seventh codicil $5,000 was bequeathed to the executor, in trust, to pay the income to William Dickinson, and upon his death the principal to the Society for the Prevention of Cruelty to Animals, at Asbury Park, New Jersey, and by the fourth item $5,000 was given to the executor, in trust, to pay the income to the widow of Anthony Comstock, and upon her death to pay the principal to the Society for the Prevention of Crime, in the city of New York. The eighth codicil provides:
"Fourth. As William Dickinson is now deceased, I make null and void the legacy of five thousand [$5,000] dollars given and bequeathed to my executor in trust for him by the third clause of the aforesaid codicil.
"Fifth. As the widow of Anthony Comstock is now deceased. I make null and void the legacy of five thousand [$5,000] dollars given and bequeathed to my executor in trust for her by the fourth clause of the aforesaid codicil." *Page 513 
The gifts of the life interests and the gifts of the principals are separate and independent. The revocations were only of so much of the gifts as were given "in trust for him" and "in trust for her." The limitation is plainly stated in the revocations.In re Whitehorn v. Best, 2 Ch. R. (1906) 121; Green v.Tribe, 27 W.R. 39; Alt v. Gregory, 8 DeG. M. G. 221; May'sEstate, 259 Pa. 115. The testator evidently intended to give the principal of the life interest given to the widow of Anthony Comstock to the Society for the Suppression of Vice of New York, with which he was associated for many years. He erroneously styled the beneficiary as the society for the prevention of crime in the city of New York. There is such a society. The two societies are allies, engaged in the same activities, and have stipulated that the legacy be paid to the beneficiary named in the codicil.
10. In bequests of $5,000 to institutions classified as "churches at Asbury Park," the testator designated "Catholic." There are two Roman Catholic churches in Asbury Park, Holy Spirit and Our Lady of Mount Carmel, and each claim a legacy and a proportionate share of the residuary estate as independent legatees. Both churches were in existence many years before the bequests were made. The testator undoubtedly had in mind organized units of the Catholic faith having church edifices in Asbury Park. To reconstruct the language of the gifts, if each had been separately stated, it would read, "I give and bequeath to each of the Catholic churches at Asbury Park $5,000." The argument is strained that by "Catholic" the testator meant the universal Roman Catholic church organization, with churches at Asbury Park, and that applying the doctrine of cy pres, or something akin to it, a single pecuniary bequest and a proportionate share of the residue should be divided between the two churches. That is neither what the testator said or intended.
11. Under the same general classification and designation the First Church of Christ-Scientist of Asbury Park and the Second Church of Christ-Scientist of Asbury Park each *Page 514 
claims to be an independent beneficiary of a pecuniary bequest, and share in the residue. There is no question that the First Church is one of the legatees. It had a church and functioned in Asbury Park some years before the seventh codicil was executed, which was well known to the testator. As to the Second Church: It was only within a month before the seventh codicil was made that some of the members of the First Church withdrew therefrom and associated themselves as the Second Church. They met for worship at various convenient places, at first in the Metropolitan Hotel, then in the state armory, and later at the public library, Asbury Park, until 1920, when they incorporated and settled in a church of their own. The existence of the association of members was not generally known. It does not appear to have been known to the testator. The bequests do not and the testator did not intend to include in the group of beneficiaries religious organizations, except those having that most prominent characteristic of organized religion — church edifices. The circumstance and fact that before the death of the testator the Second Church of Christ-Scientist acquired a church and came within the general description of beneficiaries under the seventh codicil, does not entitle it to participate as a legatee. The codicil, in this respect, must be read as of the date it was executed, and the testator's intention determined as of that time, and not by what happened afterward. Gray v. Hattersley, 50 N.J. Eq. 206;Henderson v. Henderson, 77 N.J. Eq. 317; Webb v. Webb,111 Ark. 54; Hoffman's Will, 201 N.Y. 247.
Decree will be settled on notice and service of a copy of the form on defendants' counsel. *Page 515